**KERR et al. v. AETNA CASUALTY & SURETY CO.**

No. 17305—Opinion Filed Dec. 21, 1926.

Rehearing Denied March 15, 1927.

**1. Insurance—Stipulations as to Time and Manner of Presenting Claims—Waiver by Conduct of Insurer.**

A stipulation limiting the liability of the insurer or fixing the time and manner of giving notice or presenting claims may be waived by the insurer impliedly, by conduct, as well as expressly, and where a claim is received and acted upon after the expiration of the time limited, without any objection on that account, the insurer may be deemed to have waived the benefit of the limitations as to the persons to whom notice is given or as to the time of its presentation.

**2. Same—Waiver of Notice to Home Office.**

Where a contract of insurance provides that, upon the happening of certain contingencies, upon which a claim may be based, notice shall be given to the home office of the company, and upon the happening of such contingencies notice is sent to the local agent of the insurer, who transmits it to the home office, and acting thereon, the insurer instructs its adjuster to investigate and report on the loss, the notice directed to the home office by the insured is thereby waived.

**3. Estoppel—"Waiver."**

Waiver is the surrender or relinquishment of an existing right. It may be effected voluntarily by an affirmative act by one having authority, indicating an intention to waive, and need not necessarily be preceded by notice, or it may be effected by the omission or failure of a party to assert in his behalf an existing right, which must be preceded by notice.

**4. Insurance—Acts of Insurer as Waiver of Proof of Loss.**

Where the acts of the insurer show an intention to relinquish the right of forfeiture for failure to give proof of loss, such acts will be held to constitute a waiver, and in such cases the facts need not be such as amount to an estoppel.

**5. Same—Waiver as Jury Question.**

Where notice of a claim arising under a contract of insurance is transmitted to the insurer, and in response to such notice the adjuster of the insurer is sent to investigate and adjust the claim, and the claim is treated as existing, after the time notice of loss or proof of loss should have been furnished, the question of whether the insurer intends to waive the notice and proof of claim clause as a defense is a question for the jury.

**6. Same—Sustaining Demurrer to Evidence Erroneous.**

In an action on a contract of insurance, where the plaintiffs allege in their petition a waiver of notice and proofs of loss and set forth the acts of the defendant constituting such waiver, and there is any competent evidence introduced on behalf of the plaintiff reasonably tending to support the allegations of the petition, it is error of the court to sustain a demurrer to the plaintiffs' evidence.

(Syllabus by Ruth, C.)

Commissioners' Opinion. Division No. 3.

Error from District Court, Muskogee County; Enloe V. Vernor, Judge.

Action by Eugene M. Kerr and Thos. D. Lyons, receivers, against the Aetna Casualty & Surety Company, to recover on a surety bond. From a judgment of the trial court directing a verdict for defendant, plaintiffs appeal. Reversed, and remanded.

Alger Melton, for plaintiffs in error.

Moss & Farmer and B. P. Slade, for defendant in error.

Opinion by RUTH, C. The plaintiffs, Eugene M. Kerr and Thos. D. Lyons, as receivers, brought this action against the defendant, Aetna Casualty & Surety Company, as defendant, on a bond executed by the Southern Oil Corporation as principal and defendant as surety, to secure the receivers against failure of the Southern Oil Corporation to pay for royalty oil produced from the properties of which the receivers were in charge. The bond was renewed or extended from year to year, up to and including October 1, 1922. The bond recited the following:

"Whereas, said principal has agreed to pay said obligee weekly for the oil runs from the above described land:

"Now therefore, the conditions of this obligation are such that if the said principal shall fully and promptly pay said obligee for the oil run from the above described tract of land, then this instrument shall be null and void; otherwise, to be and remain in full force and effect.

"Provided, further, that this instrument is executed by the company as surety upon the following express conditions which shall be precedent to the right of recovery hereunder. That the obligee, upon becoming aware of any act giving rise to a claim hereunder, or facts indicating such acts, shall immediately notify the company by telegraph and registered letter, giving all known particulars, addressed to its home office at Hartford, Connecticut, and shall within 60 days after discovery of any loss file with the surety an itemized statement of such loss and produce for investigation all books, vouchers and records in the obligee's possession which the surety may require.

"It is hereby understood and agreed and made a part hereof that all liability hereunder shall be limited to acts or omissions of the principal committed or omitted within one year from the date hereof, and the company shall not be liable hereunder for any claim not presented within 60 days from the expiration of such period."

It is alleged that on August 7, 1922, plaintiff notified defendant's agents at Tulsa, Okla., of the failure of the principal in the bond to pay the oil runs of May, June, and July, 1922, and plaintiff would look to

the surety for payment. On August 25, 1922, a Mr. West, agent of and adjuster for the defendant, called on plaintiff, requesting information relative to the amount due from their principal, and all information in plaintiffs' possession was furnished, and the books and accounts were tendered the adjuster for examination, who stated to the plaintiffs it would not be necessary for them to take any further action or furnish further proof of loss, as defendant would satisfy the default of the principal. That the default was not satisfied or paid, and on October 20, 1922, plaintiffs again notified the principal agents of defendant, and on October 20, 1922, the adjuster, Mr. West, pursuant to such notice, again called on plaintiffs and took up the question of the default, and stated the defendant was ready and willing to pay the same to the amount of the bond, and requested detailed information anent the default, which was furnished him, and defendant told plaintiffs it would not be necessary to bring action on the bond, as an effort was being made to refinance the Southern Oil Corporation, and if these efforts were successful, the corporation would be able to pay all claims and the adjuster requested that action be deferred until these arrangements were completed, and believing the statements of the adjuster to be true, the receivers agreed to a reasonable extension of time, upon condition that no question of the time of notice of default, or the furnishing of further detailed information as to the default would be required of plaintiffs.

It is further alleged that by reason of the notices, investigations, representations, statements, and agreements, defendant waived the provisions of the bond requiring notice of default by telegram or registered letter be sent to the home office of defendant at Hartford, Conn., and that an itemized statement of the loss be furnished within 60 days thereafter. A copy of the bond and notices is attached to and made a part of the petition. The sum alleged to be due from the Southern Oil Corporation is $6,000, and plaintiffs pray judgment against the defendant in the sum of $5,000, being the amount of the bond.

Defendant for answer denies it has waived the terms of the bond, and alleges plaintiffs have failed to comply with the last three paragraphs of the bond.

Plaintiffs, for reply, allege defendant has suffered no injury of any character by failure to comply with the terms of the bond to which plaintiffs plead a waiver in their petition, and further alleged the terms of

the bond, with which it is alleged plaintiffs failed to comply, are of no force or effect, but are null and void, being in conflict with section 9, article 23, of the Constitution of the state of Oklahoma.

The cause was tried to a jury, and upon the conclusion of all the evidence defendant obtained leave to file an amendment to its amended answer, and after such amendment was filed, defendant moved for an instructed verdict, which motion was sustained. The court, in directing the verdict, held the notice given to the general agents of defendant at Tulsa was not given to the proper parties, and that the first notice of August 7, 1922, was more than 90 days after May 1, 1922, and because of the lapse of time, and its service upon the agents instead of upon the defendant at its home office in Hartford, Conn., there was no notice as required by the bond. The jury returned its verdict under the directions of the court. Judgment was entered thereon, to which plaintiffs excepted, and after their motion for a new trial was overruled, plaintiffs appealed and present this cause here for review upon petition in error and case-made.

The errors assigned being five in number, are presented under one proposition, as follows:

"The court erred in directing the jury to return a verdict for the defendant."

The evidence developed the fact that it was the custom in the oil fields for the purchasers of oil to pay on the tenth and twenty-fifth of each month instead of each week as recited in the bond, and there was evidence introduced establishing the fact that the corporation had been in default in February, March, and April, 1922, and payments were made in June and July, 1922, which were applied to the runs of oil in the months last mentioned and liquidated the accounts in full to May 1, 1922, and the evidence discloses there was no oil run to the corporation during the month of May, 1922.

At the conclusion of all the evidence, defendant was permitted to file its amended answer, wherein it sets up as a defense a breach of the conditions of the bond. for that plaintiffs permitted the corporation to make payments on the 10th and 25th of each month, and while the time of these payments was not in strict conformity with the times mentioned in the bond, it is admitted the custom in the oil field was that payments should be made on the 10th day and 25th day of each month. As a further defense, defendant alleges as a breach of the conditions of

the bond, that plaintiffs ran certain oil to the corporation in February and April, 1922, for which no payments were made until June and July, 1922.

In so far as we are advised, this is the first action on this particular character of bond that has ever been brought to the attention of this court. Counsel has not directed our attention to any adjudicated case, and we have failed to find any precedent applicable to the instant case. However, counsel have fully briefed the question of waiver and estoppel, arising through the acts of the adjusters, where claims arose under policies of fire and life insurance.

Under a fire insurance policy no liability arises until there has been a loss by fire. Where death of the insured fixes the liability under a policy of life insurance, there is, of course. no liability until such death occurs.

In the instant case, however, there is continuing or recurring liability, which, if the terms of the policy are to be construed strictly, arises at the end of each week, provided payment is not made for the oil run the week immediately preceding the notice. If the period within which payments were to be made was not referred to in the bond, the custom in the oil field would govern, but we cannot say a custom will prevail over an express provision in the bond. Parties sui juris have the power to enter into all lawful contracts, and where the terms of a written contract are plain, clear, and unambiguous, this court will not attempt to make a contract for the parties, or substitute custom for express provisions.

In the recital of the bond requiring the plaintiffs "upon becoming aware of any act giving rise to a claim hereunder, or facts indicating such acts, shall immediately notify the company." etc., the word **immediately** must be given a liberal, and not a strict literal construction, but will be construed to mean "within a reasonable time" after default in payment, for it is not to be assumed that if the oil is run from Monday for a full week thereafter, that the check of the purchasing corporation, failing to reach the vendor in the first mail on the following Monday. the vendor would be required to **instantly** telegraph the surety of the nonarrival of the check in the first mail, for the following reasons applicable to the instant case: These plaintiffs were receivers for the "royalty oil" only. The lease was being operated by the Mohawk Petroleum Company. and was being run through the pipe line of the

Southern Oil Corporation, the principal in the bond, and the Mohawk Company submitted its production reports to the plaintiffs once each month, and the pipe line runs had to be checked against the production reports and adjustments made if any discrepancy existed. It being the custom of producers to make monthly reports, it must be presumed the bond was entered into by defendant with a knowledge of such custom, and to this extent the custom must prevail. Were it otherwise, plaintiffs would be denied of any means of checking pipe line runs against production, before acceptance of payment, and where owners or their receivers give notice of default within a reasonable time after receiving the production report and pipe line runs, plus time for checking and adjusting, we are of opinion the conditions of the bond would be complied with.

"Section 1346 Rev. Laws 1910, provides that the rule of common law requiring a strict construction of the obligations of a surety shall have no application to the obligation of a surety, guarantor or indemnitor for hire, but all such obligations shall be liberally construed in accordance with the rules of the general law applicable to policies of insurance." Maryland Casualty Co. et al. v. Town of Wellston, 47 Okla. 417, 148 Pac. 691.

Under the facts disclosed by the record, can we say the receivers were "aware of any act giving rise to a claim" under the bond "or facts indicating such acts"? This bond was first executed October 1, 1918, and had been renewed from year to year, and at the time notice was given to the agents of the defendant, all oil run had been paid for up until June 10, 1922. During the week ending Saturday June 10, 1922, oil had been run but one day, to wit, June 10th. During the week ending June 17, 1922, oil had been run but one day, to wit, June 14th. During the week ending June 24th, oil was run but one day. During the week ending July 15th, oil was run three days, and during the week ending July 22nd, oil was run but one day, or a total of seven days' run of oil, and notice of nonpayment therefor was served upon the agents on August 7, 1922, and we are of opinion the notice was served within a reasonable time after default in the July payment, when we consider it in connection with the custom of filing production reports and pipe line runs.

The final determination of this case revolves around the question of the notice and waiver, and defendant insists:

"That the law in this state is settled that there cannot be a waiver of these notices after the time within which to give the notices"

—and cites three opinions of this court as supporting its position. In North British & Mercantile Ins. Co. v. Lucky Strike Oil & Gas Co., 70 Okla. 146, 173 Pac. 845, cited by defendant, this court said:

"In an action on a policy of fire insurance. proof of loss is not waived by an answer setting up other grounds of defense nor is it waived by a denial of liability by the insurer under the policy sued upon, upon other grounds, unless it is shown by evidence that such liability was so denied by the insurer within the time fixed by the policy for making proof of loss."

In the cited case there was an allegation in the petition that the plaintiff had "done and performed all conditions and stipulations agreed and contracted by it to be performed under said contract of insurance, and that the said sum of $1,000 has matured and become due by the terms of the said policy, but that the defendant has refused to pay the same or any part thereof, though often requested so to do." Here was an allegation of notice of loss and proof of same, and there was no allegation of a waiver, and at the trial of the cause no evidence was offered either tending to show notice or proof of loss within the 60 days required by the policy, or that the same had been waived.

In the instant case there was no allegation of proof of loss within the 60 days or a denial of liability on the part of defendant, but there was a specific allegation that defendant had waived the notice to the home office, waived proof of loss, and that defendant, through its adjuster, specifically admitted liability under the policy and agreed to pay the loss to the extent of default, provided, of course, it was within the sum of the policy.

Palatine Ins. Co. v. Lynn, 42 Okla. 486, 141 Pac. 1167, cited by defendant, was identical with the case of North British & Mercantile Ins. Co. v. Lucky Strike Oil & Gas Co., supra, and in Continental Ins. Co. v. Chance, 48 Okla. 324, 150 Pac. 114, the plaintiff alleged:

"That on or about the 25th day of Sept., 1911, plaintiff notified defendant of said loss and on or about the 22nd day of Oct., 1911, he furnished the defendant with proof of loss and interest, and otherwise performed all conditions of said policy on his part."

At the trial of the cause, plaintiff did not attempt to prove notice, but attempted to prove a waiver and rested. All three cases

cited by defendant are identical, but fail to support the defendant's contention in the instant case.

It is admitted that no notice was served upon the defendant at its home office in Hartford, Conn., but it is contended defendant waived the notice to the home office by reason of the fact that one R. M. West, the adjuster for the defendant, in response to the notice to the agents at Tulsa, Okla., and after the Oklahoma agents had notified the home office by wire or letter, visited the office of plaintiffs in Muskogee for the purpose of obtaining a statement of the amount of the default and other matters pertaining thereto, and all the information then in the possession of plaintiffs was given to the adjuster, who reported to his home office in Hartford, Conn., and an effort was made by the defendant and its Oklahoma agents to have the Southern Oil Corporation pay its indebtedness to the plaintiff. While at the office of the receivers, the question of renewing the bond from October 1, 1922, to October 1, 1923, was discussed and the adjuster stated that if the corporation "paid up" the bond would be renewed. The question of the sufficiency of the notice, either as to the time or manner of serving same, was not raised by the defendant, nor was the sufficiency of the statement of loss, given to the adjuster on September 1, 1922, ever questioned, and the acts of the adjuster constituted a waiver under the great weight of authorities.

In Western Reciprocal Underwriters Exchange v. Coon, 38 Okla. 453, 134 Pac. 22, this court said:

"An adjuster for an insurance company is authorized to waive forfeitures in an insurance policy."

See, also, 3 Cooley's Briefs on Insurance, sec. 2487; Georgia Home Ins. Co. v. Allen, 119 Ala. 436, 24 South. 399; First National Bank v. Manchester Fire Assur. Mut. Ins., 64 Minn. 96, 66 N. W. 136; Gibbs v. Dutchess County Mut. Ins Co., 66 Hun. 632, 21 N. Y. Supp. 203. Dick v. Equitable Fire & Marine Ins. Co., 92 Wis. 46, 65 N. W. 742; German American Ins. Co. v. Yellow Poplar Lumber Co., 84 S. W. 551, 27 Ky. Law Rep. 105, and authorities therein cited: Home Mutual Ins. Co. v. Nichols et al. (Tex. Civ. App.) 72 S. W. 440: Mackintosh v. Agricultural Fire Ins. Co., 150 Cal. 440 89 Pac. 102, 119 Am. St. Rep. 234.

Mr. Elliott in his work on Railroads (2nd Ed.) section 1514, states the general rule, as follows:

"A stipulation limiting the liability of the carrier, or fixing the time and manner of giving notice or presenting claims, may be waived by the carrier impliedly. by conduct as well as expressly. Thus where a claim is received and acted upon, after the expiration of the time limited, without any objection on that account, the carrier may be deemed to have waived the benefit of the limitations as to the time for presenting it."

Certainly defendant could have insisted upon notice being given to its home office, and an itemized statement furnished within 60 days thereafter. These provisions were embodied in the bond for the benefit of the defendant, and the same could be waived but it chose to send its adjuster to investigate and report to the home office, and made attempts to have the corporation pay the amounts due, thereby recognizing the existence of the bond. and—

"Any act of an insurance company recognizing as an existing contract with it, the policy of insurance sued upon, after knowledge that the cause of forfeiture has occurred, is a waiver of such cause of forfeiture." North British & Merc. Ins. Co. v. Lucky Strike O. & G. Co., 86 Okla. 192, 207 Pac. 446.

And in Federal Life Ins. Co. v. Whitehead, 73 Okla. 71, 174 Pac. 784, this court held:

"Waiver is the surrender or relinquishment of an existing right. It may be effected voluntarily by an affirmative act by one having authority indicating an intention to waive and need not necessarily be preceded by notice, or it may be effected by the omission or failure of a party to assert in his behalf an existing right, which must be preceded by notice.

"An estoppel arises when a person is concerned in or does some act, either of record or in pais, which will preclude him from averring anything to the contrary."

The notice to defendant's agents having been given on August 7, 1922, and the adjuster having on September 1, 1922, called at the office of the receivers for information relative to the default and having received all the information available within 60 days after notice, the defendant attempted to obtain payment from the corporation, and being unsuccessful. the adjuster again went to Muskogee, and had a conference with both receivers, their secretary also being present, and here occurs the only conflict in the evidence. There is no conflict in the evidence to the effect that an effort was being made in oil circles to refinance the Southern Oil Corporation, and that fact appears to have been generally known, and it is a matter of common knowledge that a suit of this character, filed against a corporation in financial

difficulties, would militate against the probabilities of its being reorganized or refinanced.

Plaintiffs testify that during this conference and discussion relating to the refinancing program, the adjuster, Mr. West, stated the defendant would pay the deficit, but requested the receivers to refrain from bringing any action until the refinancing plans matured, and upon this assurance the receivers rested and relied. Mr. West, the adjuster, denies he said the defendant would make good the deficit, or that he had any authority so to do, and that at that time he demanded an itemized statement of the loss sworn to before a notary public. The bond did not require a statement sworn to by the receivers, and the adjuster could not demand the same, and it is not denied that all information in possession of the receivers was given to the adjuster or placed at his disposal.

In Security Ins. Co. of New Haven, Conn., v. McAlister, 90 Okla. 274, 217 Pac. 430, this court said:

"In order for the acts and conduct of the insurer to estop it from claiming forfeiture of the policy, it must appear that the acts or conduct of the insurer misled the insured and caused him to alter his situation to his prejudice.

"Where the acts of the insurer show an intention to relinquish the right of forfeiture for failure to give proof of loss, such acts will be held to constitute a waiver, and in such cases the facts need not be such as to amount to estoppel."

The question raised by the evidence, as to the statements of the adjuster, were unquestionably for the jury, as was the question of whether the defendant intended to waive the notice and "itemized statement of loss" clause, and while the case of St. L. & S. F. Ry. Co. v. Ladd, 33 Okla. 160, 124 Pac. 461, is not directly in point, it is persuasive upon this court, and announces the true rule to be adopted in this case. The court there said:

"Where there is evidence tending to show that the freight claim agent of a common carrier receives a claim for damages to a shipment of live stock after the time limited by a clause of the shipping contract requiring notice, which has not been complied with by the shipper, has expired, treats it as pending, and then rejects it on other grounds, the question of whether the carrier intends to waive the notice clause as a defense, is a question of fact for the jury."

Under the great weight of authorities, we are of the opinion the court erred in directing the jury to return a verdict for the defendant, and the judgment of the trial court is therefore reversed and the cause remanded to the district court with directions to grant the plaintiffs a new trial not inconsistent with the views herein expressed.

By the Court: It is so ordered.