## CALIFORNIA INS. CO. v. SECURITY STATE BANK OF MIAMI, OKLA., et al.

No. 19233.   Opinion Filed March 5, 1929.

Rehearing Denied May 21, 1929.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiff in error.

D. H. Wilson, for defendants in error.

DIFFENDAFFER, C. This is an action by defendants in error, herein referred to as plaintiffs, against plaintiff in error, herein referred to as defendant, to recover on a policy of insurance covering an automobile against loss by theft. J. H. Smalley was the owner of the automobile, and the policy was issued to him as "assured," with loss payable clause attached in favor of the Security State Bank. Loss by theft is alleged to have occurred on November 30, 1926. The petition is in the usual form, except it alleges waiver of proof of loss in that the Bates Adjustment Company of Oklahoma City was the agent of defendant for the purpose of adjusting the loss, and that one —— Boston, its representative, before the expiration of 60 days from the date of the loss,

"came to the city of Miami, and he, with the aid of the plaintiff, Joe H. Smalley, made a careful and thorough investigation

concerning said loss, and likewise conferred with the plaintiff, Security State Bank, through its president, J. W. Roberts, and stated as a result of such investigation that no formal proof of loss would be necessary, as his investigation had been sufficient as regarded the loss."

Defendant answered by general denial, and specifically denied that it had waived proof of loss as alleged in the petition, and pleaded that plaintiff had wholly failed to furnish proof of loss by theft in any manner or form at any time. Other allegations in defense were made which we deem unnecessary to set out.

Plaintiff replied by general denial. The cause was tried to a jury, resulting in a verdict and judgment for plaintiffs, from which judgment defendant appeals. There are six assignments of error, but only the 4th, 5th, and 6th are presented in the briefs.

The first proposition presented under assignment No. 4 is that the court erred in refusing to sustain defendant's demurrer to plaintiffs' evidence. Under this proposition, it is first contended that, as plaintiffs admit that there was no proof of loss, the evidence is wholly insufficient to prove a waiver by defendant. In this connection the record clearly disclosed that defendant referred the adjustment of the claim to the Bates Adjustment Company of Oklahoma City; that a Mr. Boston, representative of the Bates Adjustment Company, went to Miami some 40 days after the alleged loss of the car and made inquiry concerning the loss of the automobile and the interest of the bank in the policy. Plaintiff Smalley testified that in a conversation had with Boston while he was in Miami for that purpose, Boston said to him:

"He told me that at first he thought it was some of my friends was just playing a trick on me, but that it evidently was stolen and the company would be stuck for it.

"He told me he was satisfied about the loss, and told me it was just courtesy on his part to me to go out there himself and make an investigation, just as a friend, not as the Bates Adjustment Company or that way; he·said, 'I am satisfied about the loss and will send you the papers to be signed.'"

J. W. Roberts, president of plaintiff bank, testified relative to a conversation with Boston, as follows:

"Mr. Boston admitted to me if they were not able to find this automobile within 60 days' time that the insurance company would be liable to pay, and we could rest assured that we would be taken care of, but they

wanted the full 60 days' time limit in which to make investigation and find the car if it was in their power so to do, and that proper notices had been sent out over the country, as is the usual custom, to see—to ascertain if they could locate the car; and of course I advised him that I had no objection to that; if they could find the car that was satisfactory, but if they were not able to find the car within 60 days' time we would expect the insurance company to take care of this policy of insurance."

This testimony is not disputed, and under the law of this state with respect to demurrer to the evidence will be viewed in favor of the party against whom the demurrer is directed. In effect this was to tell the plaintiff that the company would find the car and return it to plaintiff, if possible within the 60 days, and if this could not be done, the company would consider itself liable on the policy without further proof of loss. In fact, the direct statement was made to Smalley that he, Boston, was satisfied about the loss. This could mean nothing less than that no further proof of loss would be required.

In 26 C. J. 394, it is said:

"By the weight of authority, one who is intrusted by the insurer with apparent power to adjust the loss ordinarily has authority to waive notice of proof of loss."

And in 26 C. J. p. 395, it is said:

"By the weight of authority, an officer or agent otherwise having authority to waive notice or proofs of loss may bind the insurer by an oral or implied waiver notwithstanding a stipulation in the policy that no officer or agent shall have power to waive any of its terms or conditions unless the waiver is in writing indorsed on the policy or attached thereto."

In principle, this rule is applied in Western Underwriters Exchange v. Coon, 38 Okla. 453, 134 Pac. 22.

See, also, Am. Cent. Ins. Co. v. Sinclair, 61 Okla. 17, 160 Pac. 60; Springfield F. & M. Ins. Co. v. Fine et al., 90 Okla. 101, 216 Pac. 898.

In Kerr v. Aetna Casualty Surety Co., 124 Okla. 112, 254 Pac. 105, it was held that an adjuster of an insurance company is authorized to waive notice of loss or proof of loss, and it was further held:

"In an action on a contract of insurance, where the plaintiffs allege in their petition a waiver of notice and proofs of loss and set forth the acts of the defendant consituting such waiver, and there is any competent evidence introduced on behalf of the plain-

tiff reasonably tending to support the allegations of the petition, it is error of the court to sustain a demurrer to the plaintiffs' evidence."

There was no error in overruling the demurrer on this ground, nor in instructing the jury that defendant had, as a matter of law, waived proof of loss.

It is next urged that the demurrer to plaintiffs' evidence should have been sustained, for the reason that the evidence wholly failed to establish a theft of the insured automobile within the meaning of the policy. The evidence in brief shows that Smalley drove the automobile from Miami to Picher, Okla., about 11:30 a. m., Nov. 30th, and locked it and left it standing on the street. After leaving the car, he learned, as he says, of a chance to make $50 pretty easily. He then delivered the keys to his car to a friend named Alcott, with instructions to place the car in a garage that evening if he did not return for it. He left Picher and did not return for two days. When he did return he went to the garage where he had directed the car to be placed and found that it had not been left there. He then went at once to the home of Alcott and inquired about the car. Alcott returned the keys to him and expressed great surprise that the car had been taken. Alcott then went with him, and for about two weeks assisted him in hunting for the automobile. The company was at once notified of the loss, as was the sheriff. The sheriff made considerable effort to locate the automobile and Smalley and the sheriff had about 500 cards printed offering a reward of $50 for the return of the car and $100 for the arrest and conviction of the thief. These cards were mailed to sheriffs and chiefs of police throughout Oklahoma and surrounding states. No trace of the car was ever found. At the trial, it was shown that plaintiff did not then know where Alcott was and that he had inquired of Alcott's friends and relatives, but he could not be found.

It is urged that, because Smalley delivered the keys for his automobile to Alcott, and Alcott was not produced to prove that he did not take and dispose of the car, plaintiff wholly failed to prove a theft of the automobile. It is suggested in the brief of defendant that:

"There was no testimony to show what friend (?) Alcott did with the car while its owner was after the 'easy' money. Did friend (?) Alcott take charge of the car, as directed, while its owner was pursuing 'easy' money? If so, what did friend (?) Alcott do with it? Did friend (?) Alcott hide out the car? Did friend (?) Alcott have a friend (?) and did that friend (?) hide out the car? Was the car actually stolen from the possession of Alcott?"

It is then argued that the testimony does not answer these questions nor either of them; that in the absence of testimony, we are not justified in concluding that this car was stolen on a business street and from in front of a prominent business house in the daytime.

It is clear that some person took the automobile from the place where Smalley left it standing in the street and deprived the owner thereof. This must have been done by Alcott or some unknown person. If by Alcott, it would not have amounted to theft or larceny of the automobile; if by another, it would. The trial court plainly instructed the jury that the wrongful taking of the automobile would have to be accomplished by a person other than Alcott to entitle plaintiff to recover, and in plain language told the jury that if they found and believed from the evidence that Alcott did, pursuant to instructions from Smalley and with his consent, take possession of the automobile and thereafter embezzled or converted the same to his own use, or wrongfully disposed of it, that such would not be an act of theft or larceny within the meaning of the law and within the meaning of the policy, and that in such event plaintiffs would not be entitled to recover. The question of whether the automobile was taken by Alcott or by another was a question of fact for the jury, and the verdict in favor of plaintiff under these instructions was clearly a finding that Alcott did not take and embezzle or otherwise dispose of the automobile. There was sufficient evidence to warrant the court in submitting the case to the jury on this point, and it was not error to overrule the demurrer to the evidence on this ground.

It is next urged that the trial court committed error in admitting evidence of the sheriff as to his acts and what he did in an effort to recover the automobile. The defendant raised the question of Smalley's good faith, and this evidence was clearly admissible on that issue, as it was shown that the sheriff was acting at the request of Smalley.

Under assignment No. 5, defendant urges that the court erred in instructing the jury that from the evidence defendant had as a matter of law waived formal proof of loss. This question is disposed of by what we have said under assignment No. 4.

Under the sixth assignment of error, defendant contends that the court erred in refusing to give its requested instruction No. 1, which is:

"You are instructed that theft is defined as the taking of personal property by fraud or stealth, and unless you find by a fair preponderance of the evidence that the automobile in question was taken from the possession of A. B. Alcott without his knowledge or consent, then you will return your verdict for the defendant."

In instruction No. 4, the court told the jury that:

"Theft, or larceny, is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof."

The word "theft" is not defined by our statutes. The definition given in instruction No. 4 is the definition of larceny, as contained in section 2101, C. O. S. 1921. In 38 Cyc. 272, theft is defined as "a popular name for larceny." See, also, People ex rel. v. Donahue, 84 N. Y. 438, citing Bouvier's Law. Dic. and 4th Blackstone Com. 229-230; State v. Boyce, 65 Ark. 82.

The contention is without merit, and there was no error in refusing the instruction offered, for the reason that the subject was fairly covered in instruction No. 4, and for the further reason that the instruction offered omitted the essential elements of intent, and, further, would have required the jury to find that the automobile was taken from the possession of A. B. Alcott before they could find in favor of plaintiff, whereas the evidence was such that the jury might have found that the automobile was taken from the street by some third party, and without Alcott ever having had possession thereof.

The judgment of the trial court should be affirmed.

BENNETT, HERR, HALL, and JEFFREY, Commissioners, concur.