Lulu Thompson, Appellee, v. Patrons Mutual Fire Insurance Association, Appellant.

No. 45769.

November 18, 1941.

Rehearing Denied March 13, 1942.

Daniel J. Gallery and X. C. Nady, for appellee.

Carl P. Knox, H. E. Newton, and H. H. Griffiths, for appellant.

WENNERSTRUM, J.—Plaintiff has brought an action to collect on a fire insurance policy issued by the defendant association. Loss was sustained by reason of damages by fire to plaintiff's residence property and the contents. The policy had been issued to the plaintiff's son. The association plead and contended in the district court that it had no contract with the plaintiff and for that reason she had no cause of action against defendant. The court submitted the case to the jury, after overruling a motion for a directed verdict at the close of plaintiff's testimony and again at the close of all the evidence. There was a claim made on the part of the plaintiff that certain acts and statements made by officials of the association constituted a waiver and estoppel on the part of the defendant to raise any question as to the ownership of the property and as to the issuance by it of the policy in the name of her son. The jury returned a verdict in favor of the plaintiff. The trial court overruled defendant's motion for a new trial and exceptions to instructions and entered a judgment against the defendant in accordance with the verdict. Defendant has appealed to this court.

Our consideration of the issues involved in this appeal necessitates a brief review of the facts as disclosed by the evidence. The property in question is located in Earlham, Iowa. The policy was issued on or about January 11, 1938, and at the time of its issuance title to the property was in the name of Lulu Thompson, the plaintiff herein, who held a one-third interest and her six children who each had a one-ninth interest. Robert Thompson was one of plaintiff's children.

On the date of the issuance of the policy, Robert Thompson and his wife, Fay, were residing in the property. On that date one W. E. Ruscher, then president of the association but later secretary, came to the home where Robert and his wife were living and an application for insurance with the defendant association was made out. According to the testimony of Robert Thompson he advised Ruscher at that time that title to the property was in the mother and six children and Thompson was ad-

vised by Ruscher that the policy could be taken out in his name even though he did not hold complete title. Mr. Ruscher is quoted by Mrs. Robert Thompson as saying that "he trusted my husband enough, that if there was a loss he would settle with his mother instead of writing two policies."

There was testimony introduced that plans were being formulated to have title to the property transferred to Robert Thompson. Mrs. Thompson, Robert's wife, testified, "we were paying for the insurance; it was intended that the place was to be deeded to us, so the insurance was taken in his [Robert's] name."

During March 1938 deeds to the property in question were made by Lulu Thompson, the mother, and by the other Thompson children wherein the property covered by the insurance policy was conveyed to Robert Thompson and Fay Thompson.

Robert Thompson and his wife moved out of the property sometime in June 1939 and plaintiff occupied it until a fire occurred January 16, 1940. It was further shown by the evidence that a quitclaim deed from Robert Thompson and Fay Thompson, his wife, to Lulu B. Thompson, was filed for record October 1, 1938. This deed conveyed to the plaintiff the property herein involved. The plaintiff testifies that on the date the deed was given she also obtained the policy which is the subject of this litigation. There was no written assignment and no notice to the company except as hereinafter noted.

On or about October 10, 1939, a written notice was sent to Robert Thompson by W. E. Ruscher which in substance gave notice to pay the assessment then due within thirty days from the date of the mailing of the notice. It further stated that if it was not paid, a second notice would be given and that if the assessment was not then paid within thirty days, a registered notice would be sent and thereupon the policy suspended.

On October 25, 1939, one Clyde Nolte, a director of the defendant association, came to the Earlham residence then occupied by plaintiff, accompanied by Glenn Fowler. These parties informed plaintiff that they were inspecting houses for the association. The plaintiff states that at that time she asked these men if the policy she had was good and according to her testimony, "they said it was." On that occasion she asked Mr.

Nolte about writing some more insurance for her and at that time, according to plaintiff's testimony, "he said this insurance was all right."

On the occasion of inspection by Fowler and Nolte the plaintiff was given a certificate of inspection on a printed form, which is in part as follows:

"Certificate of inspection.
"Patrons Mutual F. & L. Assocn.
"Policy No. 7702.
"Re-ins. No. 78,012.

"Name (was) Robert Thompson. Lulu B. Thompson, Earlham, Iowa.

"* * *. This certificate delivered to Mrs. Thompson on this 25th day of Oct., 1939. Inspector. Glenn Fowler."

It is asserted by the defendant and borne out by the testimony that Glenn Fowler, at the time of the inspection, was representing a reinsurance organization that apparently was carrying reinsurance on the policies issued by the defendant association. However, on the back of the form which Fowler signed is this further statement:

"To our members:
"Dear Friend: The inspector who made this report has visited your place at our request. * * *.
"Very respectfully, W. E. Ruscher, Secretary."

Plaintiff further testified that when the inspection notice was given to her there was further conversation about the insurance and her testimony is in part as follows:

"* * *; and I asked him if the policy was all right, as it was taken out in Robert's name and had been turned over to me, and he [Nolte] said the policy was all right, it didn't make any difference who carried your insurance, anyone could carry it if they were interested enough to carry the insurance for you."

Plaintiff further testified that she did not get any assignment but said "I only asked Mr. Nolte about it and he said it was all right; that was the time Mr. Fowler was there."

Plaintiff further testified that following the fire W. E.

Ruscher and Mr. Nolte had a conversation with her and as to this conversation plaintiff testified "and he [Ruscher] said if I had paid this assessment, that my insurance would have been all right. * * *. We asked him about this—why didn't we get this registered letter, and he said the company had quit sending out registered letters; that they didn't do it any more. We asked him why it was on this paper he sent me; why this statement was on there, and he said it was an old form they used; they did not send out registered letters any more. I asked him then if I had paid this assessment if my insurance would have been all right, and he said it certainly would, and he said he wished he could pay it; that he would pay it if he possibly could."

As to the plaintiff's conversations and testimony, Mr. Nolte testified that he heard the conversation that the plaintiff had with Mr. Fowler and that she told him she owned the property now. Nolte further testified that "he [Fowler] told her it was in Robert Thompson's name; and she said to put it in her name; he said to notify the company of the transfer."

It was testified by W. E. Ruscher that on December 11, 1939, he addressed a second notice to Robert Thompson and Lulu Thompson and mailed it to them at Earlham, Iowa, which notice it was claimed was in substance, as follows:

"Your assessment on policy No. 7702, amounting to $13.75, has not been paid, but upon receipt of same policy will again be in force, and I trust you will give it your attention. Yours respectfully. W. E. Ruscher, Secretary."

The plaintiff, Lulu Thompson, and Robert Thompson testified that they never received any such notice as the witness, Ruscher, stated was sent them.

There was no denial by Ruscher or Nolte as to the facts testified to by the plaintiff, except as to the sending of the notice on December 11, 1939.

On December 27, 1939, a notice was mailed by the defendant association by W. E. Ruscher, secretary, addressed to Mrs. Lulu Thompson which advised her that her assessment for $13.75 on policy No. 7702 was unpaid and that at the expiration

of thirty days from this notice the secretary is required to send a second notice by registered mail, and that the insurance would be invalid from the day of receiving the second notice until the full amount was paid. This notice dated December 27, 1939, was termed "second notice for assessment" but according to the testimony of Mrs. Thompson at the time she received it the words "second notice for" were marked out. Lulu Thompson, the plaintiff, and Robert Thompson testified that they never received any other notice concerning any further assessment for insurance on the property involved and they particularly deny that either one of them received any notice from the association dated December 11, 1939, as testified to by W. E. Ruscher.

No notice by registered mail was given to either Robert Thompson or Lulu Thompson, the plaintiff.

It is the contention of the defendant that the court was in error in submitting the case to the jury in that there was no evidence or showing of an insurance contract between the plaintiff and the defendant at the time of the fire; that the policy sued on was void by its terms since the original insured, Robert Thompson, never had sole or unconditional ownership of the property; that it is shown that Robert Thompson, the original insured, conveyed the property to his mother and his insurable interest therein ceased and that there was no new contract consented to by the defendant for insurance in favor of the plaintiff; and that the policy was secured upon the original representation that Robert Thompson was the sole owner of the property or would become the sole owner when in fact title was taken in Robert Thompson and his wife, which it is claimed was a fraud on the defendant. That by reason thereof the policy was void and no recovery can be had on it because of the original void nature of the policy.

I. We are of the opinion that the defendant cannot claim that there was no valid contract of insurance entered into with Robert Thompson. Under the facts in this case this contention cannot be sustained under our prior holdings. It is shown that Robert Thompson, the original insured, informed W. E. Ruscher, the president of the association at the time application for the policy was made, that he did not have full title to the property. Statements attributed to Ruscher relative

to this fact were at no time denied by Ruscher even though he was a witness called on behalf of the association. Upon the question as to whether or not there had been a waiver of the association as to the original ownership of the property we hold that this question was properly submitted to the jury.

In the case of Wisdom v. Farm Property Mutual Ins. Assn., 199 Iowa 408, 411, 412, 202 N. W. 4, 5, 6, we said:

"Appellee was not, however, by reason of the homestead character of the property the sole and absolute owner thereof. The agent who procured the applications was, at the time of the trial, deceased. The testimony of appellee that he correctly and truthfully informed the agent as to the title and additional incumbrance upon the land, before the original policy was written or the riders attached thereto, is not disputed. Under the provisions of Sections 1749 and 1750 of the Code, 1897, appellant was charged with notice of all material facts stated by the insured to the agent at the time the application was signed; and no advantage can be taken of the failure of such agent to correctly fill in the answers to the questions, or to inform the association thereof. If the testimony of appellee was believed by the jury, then a clear waiver or estoppel was established, and the policy was not rendered invalid, as claimed by appellant. This rule is familiar and well established in this state. [Citing cases.]

"The information as to the title and the additional incumbrance was imparted to appellant's agent in due time, and as a part of the transaction which the agent was authorized to conduct for appellant. The finding of the jury upon this point is conclusive. The contention of counsel that the soliciting agent was without authority to waive the provisions of the by-laws may be conceded, and what he may have said to appellee respecting the title is not material. Notice of the facts imparted by appellee to the agent was imputed to appellant, and is, by reason of that fact, binding thereon."

There is a further holding to this same effect in the case of Neiman v. City of New York Insurance Co., 202 Iowa 1172, 1177, 1178, 211 N. W. 710, 712, wherein the following statements are set forth:

"That the insurance company was bound by whatever knowledge with respect to the property insured was possessed by its agent, is well settled. [Citing cases.]

"It is also well settled that, although by the terms of the policy it is provided that a change of ownership of the insured property will defeat the rights of the assured or of an assignee of the policy, the insurer may consent to carry the risk notwithstanding the change of title; and when, with knowledge of the fact that the title to the property has changed, it receives the premium stipulated for in the policy, it thereby elects to continue the policy, with whatever moral hazard may attach to the change of ownership; and this is true although there is no written assignment of the policy. [Citing cases.] And if, with knowledge of the facts constituting a forfeiture of the policy, the insurer continues to treat the contract as of binding force, and induces the insured to act in that belief, the forfeiture is waived. [Citing cases.]

"It is the almost universal holding of the courts generally that, where an insurance company knows of a transfer of the insured property, or of other facts which, according to the terms of the policy, would, without its consent thereto, render the policy void, but does not cancel or attempt to cancel the policy, and retains the premium paid by the insured, and treats the contract as valid, it waives any forfeiture of the policy based thereon. [Citing cases.]"

The authorities cited by the defendant pertaining to knowledge of an agent are not applicable under the facts in this case.

II. It is the further contention of the defendant that it is a mutual assessment association organized under the provisions of chapter 406 of the Code which anticipates membership in the association through an application thereto. It is contended that there was never any understanding between the plaintiff and the defendant whereby there could be any relationship which would be the basis for her to claim any insurance rights under the policy issued and against the association. Defendant has cited several cases growing out of fraternal life insurance policies but it can be here stated that these policies referred to were issued under a separate chapter of our Code

and under different provisions and do not appear to the court to be applicable in this case, both under the statute and under the facts.

The defendant association knew of the ownership by Lulu Thompson, as is shown by her undenied testimony, prior to the loss and gave notice to her of the assessments due. It seems to us that our holdings in the case of Neiman v. City of New York Insurance Co., supra, as heretofore quoted are applicable.

III. It is particularly contended that, inasmuch as the defendant association is a mutual assessment corporation, and under the statutes and its articles of incorporation there must be a mutual arrangement between the members, this mutual arrangement can only develop by plaintiff making necessary application to become a member. It is shown by the evidence that the defendant through its officers had knowledge of the plaintiff's ownership in the property and her interest in the insurance. Mutual assessment associations like any other organization can only act through its representatives and officers and in the instant case the plaintiff was dealing with defendant's officers. With the officers dealing with the plaintiff in the manner that they did, it appears to us that the jury could have found that they waived the conditions relative to the application upon which they are relying and thereby acknowledged the plaintiff's interest in the policy. The evidence also warranted the jury in finding that the association had a spark arrestor placed in the chimney of plaintiff's dwelling with knowledge of the plaintiff's title and thereby further acknowledged plaintiff's interest in the policy. By reason of this waiver, the association cannot now claim there was no contract arrangement between the plaintiff and the defendant association. It further appears to us that the question as to whether proper notices were given to plaintiff was a question for the jury. By reason of this fact, it is our holding that the recovery by the plaintiff was proper.

Numerous other claimed errors, as made by the defendant, have received our consideration but our discussion of the previous matters set out does not necessitate our commenting in detail concerning the other errors of which complaint is made.

It is therefore our holding and conclusion that the trial

court properly submitted the case to the jury and that it should be affirmed.—Affirmed.

MILLER, C. J., and HALE, OLIVER, BLISS, GARFIELD, SAGER, and STIGER, JJ., concur.