## Motors Insurance Company v. Stanley.

No. 41270 November 23, 1959 115 So. 2d 678

682

*Robertson Horton,* Winona, for appellant.

*Rupert Ringold, J. W. Conger,* Winona, for appellee.

GILLESPIE, J.

The appellee, Dexter Stanley, filed suit in the circuit court against Motors Insurance Corporation, appellant here, for the recovery of the actual cash value of a 1956 Model GMC truck, and alleged that a valid collision insurance contract had been issued to appellee by appellant, and on November 16, 1957, the truck had been damaged in a collision and was a total loss. Appellee alleged that he purchased the truck from a dealer, David T. Dotson, in 1956. The policy exhibited to the declaration contained a provision excluding coverage if the truck "is or at any time becomes subject to any bailment lease, conditional sale, purchase agreement, mortgage or other encumbrances not specifically declared and described in this policy."

Appellant's answer charged that the appellee had no insurable interest in said vehicle and had assigned his interest in the same without the consent of the appellant, thereby violating the terms of the policy. Other defenses raised need not here be stated.

Yellow Manufacturers Acceptance Corporation intervened as a party plaintiff, asserting their claim under a conditional sales contract covering the subject vehicle and there is no issue in this appeal in connection with the intervening plaintiff. The case was submitted to the jury and a verdict was returned against appellant for $3500. Of this amount, Yellow Manufacturers Acceptance Corporation was entitled to received $2,271.61, the balance due on the conditional sales contract, and the appellee, Dexter Stanley, the balance of $1,228.39. Motors Insurance Corporation appeals from this judgment.

Appellant assigns as error the refusal of the lower

court to grant a new trial. One of the grounds for the motion of the new trial was that the verdict of the jury was against the overwhelming weight of the evidence. Since we think this assignment is well taken, it requires a discussion of the evidence in some detail.

Dexter Stanley, appellee, testified that he has been in the trucking business since 1949, and continued until seven or eight months prior to the date of the trial; and that he bought the GMC truck in question and produced the bill of sale therefor; that at the time he purchased this truck he had two small gravel trucks; that when the truck in question was wrecked, it was being driven by Charles Vance, employee and son-in-law of Mrs. L. M. Stanley; that the truck was kept part of the time at Kelly Stanley's place under an arrangement with Kelly Stanley, or his wife, Mrs. L. M. Stanley (also known as Mrs. Marie Stanley); that Kelly Stanley paid the driver of the truck, who was Charles Vance. He stated that the arrangements between him and Kelly Stanley in relation to the truck was that whenever he wasn't around Kelly Stanley or his wife made the payments and they used the truck some and he used it some, and that he, appellee, "got everything made out of it other than what it cost to run it;" that Mrs. L. M. Stanley made the payments and charged it to appellee's account; that Mrs. Pauline Vance, wife of Charles Vance and daughter of Kelly and Mrs. L. M. Stanley, kept the books for Mrs. L. M. Stanley's business; that the tag for the GMC truck was bought in Mrs. L. M. Stanley's name but that the money came from appellee's funds; that he never did sell the truck.

On cross-examination, appellee testified that he had never been in business with Kelly Stanley or Mrs. L. M. Stanley, but that he had hauled for Mrs. Stanley, and that Kelly and Mrs. L. M. Stanley had owed him money for a long time; that he had paid $500 on the GMC truck, which represented the $500 side note to the

Dotson Motor Company, the seller of the truck, but that payments for the truck had been made by Mrs. L. M. Stanley and were charged to him by Mrs. Stanley's bookkeeper. He said he had two small trucks hauling gravel for Mrs. L. M. Stanley, and they settled with him every month for this work. He admitted talking to the representatives of appellant insurance company some ten days after the GMC truck had been wrecked. A statement was introduced which he admitted signing at the time he talked to the representatives of appellant. In that statement appellee stated:

"I kept the truck about 3 months and I don't think I paid any notes on the car except the side note. I then traded the truck to my brother Kelly Stanley in Winona for a 55 Chevrolet 2 ton truck and he have paid the payments since then. We never did change names or anything on the truck but just traded between ourselves. The license tag on the 550 GMC is registered in Kelly's wifes name. No actually I don't have any interest in the 550 any more as it is Kelly's since our trade."

Appellee testified that this statement is not true, but he admitted that he had a conversation with two representatives of appellant after which they wrote this statement out and read it to him in full and he signed it. He did not contend that he was coerced or otherwise induced to sign the statement but he said that he cannot read well and that the reason he signed it was that he thought they were going to replace the truck. He admitted telling the insurance men to settle with Kelly Stanley or Mrs. L. M. Stanley and he admitted knowing that the truck in question was registered in Mrs. L. M. Stanley's name as the owner. He testified that Kelly Stanley had become bankrupt and the trucking business of Kelly Stanley had been continued in the name of Mrs. L. M. Stanley since the bankruptcy. Appellee stated that he got the profits from the truck in question which

was operated by Mrs. L. M. Stanley, but there is no testimony as to any specific item or amount of profit that he received or was entitled to therefrom.

Mrs. Pauline Vance is the wife of Charles Vance and the daughter of Kelly Stanley and Mrs. L. M. Stanley. She testified the GMC truck in question belonged to her uncle, Dexter Stanley, the appellee. She said the only interest Mrs. L. M. Stanley had in the truck was "it was leased, I guess you would say it was leased, we just used it, we didn't have a legal lease drawn up on it." Mrs. Vance testified that under the lease agreement the cost of operating the truck and the monthly payments were to be paid out of the earnings from the truck and the balance *divided* between appellee and Mrs. L. M. Stanley. She said that she ran the L. M. Stanley business; and that they had had the GMC truck since about a month after Dexter Stanley purchased it. She said she bought the tag for the truck in her mother's name but it was Dexter Stanley's truck; that they bought the tag in Mrs. L. M. Stanley's name because the job was Mrs. Stanley's; that Mrs. L. M. Stanley paid the monthly payments of $214 each to the Yellow Manufacturers Acceptance Corporation and kept all the records on the payments. She introduced a ledged account whereon the indebtedness to Yellow Manufacturers Acceptance Corporation was set up as a debit on the books and as each monthly payment was paid, there was a credit entered against this account. She said that Mrs. L. M. Stanley paid Charles Vance for driving the truck for some four or five months prior to the wreck, and that Charles Vance never worked for Dexter Stanley and that Dexter Stanley had no connection with the business of Kelly Stanley or Mrs. L. M. Stanley.

Mrs. Vance testified that Mrs. L. M. Stanley paid $550 for a new motor for the truck a few months before it was wrecked, but charged it to Dexter Stanley. She referred to the books of Mrs. L. M. Stanley with

reference to payments made to Dexter Stanley for hauling gravel with the two small trucks that Dexter Stanley owned. The books do not show that Dexter Stanley is due any money now. There is no definite testimony in relation to the L. M. Stanley books to show any payment to Dexter Stanley on account of the earnings of the truck in question; and Mrs. Vance admitted she could not tell from the books what part of the income of the L. M. Stanley business came from the GMC truck which is the subject of this lawsuit; that after Mrs. L. M. Stanley took over the GMC truck, it was leased by Mrs. Stanley to the Delta Forwarding Company of Greenwood and was used in hauling cotton to Georgia and other states and the truck was under the control of the Delta Forwarding Company and available to that firm whenever it was called for.

Charles Vance testified that he was driving the truck in Georgia when it was damaged and that he was an employee of Mrs. L. M. Stanley and paid by L. M. Stanley. He did not know who the truck belonged to when it was involved in the wreck but he does now; that later on he learned it belonged to Dexter Stanley.

Mrs. L. M. Stanley testified that her daughter, Pauline Vance, took care of her business and kept all the books, and she does not claim any ownership in the truck in question; that it is owned by Dexter Stanley.

Joe Colvin, representative of appellant, testified about taking the statement from Dexter Stanley, which he said he wrote out after the interview, and that he read the statement to Dexter Stanley, who signed it without making any objection. He testified he did not tell Mr. Stanley that the vehicle was to be replaced.

Mr. David T. Dotson, operator of Dotson Motor Company, who sold the truck to Dexter Stanley, testified that he took the application for the policy of insurance here sued on.

The record shows that when the truck in question was purchased by Dexter Stanley, he traded in a truck reg-

istered in the name of Mrs. L. M. Stanley as part of the purchase price.

██ ■ Appellee admitted signing the statement that he had traded the truck to another after the statement had been read to him in its entirety. The effect of his testimony at the trial was to deny the truthfulness of the statement and an attempt to explain why he signed it. The statement, being an extra-judicial admission, is a. mere item of evidence. It is not conclusive in the sense that it may not be contradicted by the declarant and by other evidence.

The probative value of appellee's admission is two-fold: (1) It furnishes, as against appellee as a party to the action, the same discrediting inference as that which may be made against a witness in consequence of a prior self-contradiction. (2) The statement has such testimonial value as belong to any testimonial assertion under the circumstances; and the more notably it runs counter to the natural bias or interest of the appellee when made, the more credible it becomes. Sec. 1048, Wigmore on Evidence, 3rd Ed., Volume 4, pages 5, 6.

 Notwithstanding the rule that this Court should consider all the testimony in the light most favorable to appellee in determining whether the verdict for appellee is contrary to the overwhelming weight of the evidence, we are of the opinion that for the following reasons the verdict is contrary to the overwhelming weight of the evidence:

(1) When appellee signed the statement, which, if true, shows that he violated the terms of the policy, he knew the truck had been wrecked and he knew of the insurance policy. His statement that he had traded the truck and had no further interest in it was contrary to his interest, and the law of evidence recognizes that under such circumstances, it is improbable he would have signed the statement if it were not true. The credibility of the written statement (and the falsity of his

denial of the truthfulness of the statement) is based on human nature and experience, which is the foundation of Wigmore's rule as to the probative value of extra-judicial admissions.

(2) Appellee did in fact relinquish possession of the truck at about the time the written statement said he traded it to his brother, and the truck was thereafter operated and controlled by Mrs. L. M. Stanley (who succeeded to her husband's business after the latter's bankruptcy.)

(3) The entry on the L. M. Stanley books showed as a debit item the balance due Yellow Manufacturers Acceptance Corporation on the conditional sales contract, and credits when payments were made. The attempt by Mrs. Vance to explain these entries does not negative the fact that such entries are consistent with the contention that appellee traded the truck and had no further interest in it.

(4) The registration of the truck in Mrs. L. M. Stanley's name as owner when the 1957 tag was purchased.

(5) The discrepancies in the testimony of appellee and Mrs. Vance as to the terms of the lease between appellee and Mrs. L. M. Stanley, and the failure of both to give definite provisions of such lease.

(6) If the truck was leased to Mrs. L. M. Stanley under an agreement whereby appellee would receive all or part of the profits from its operation, the books of Mrs. L. M. Stanley should have reflected the profits or earnings of the truck, yet Mrs. Vance testified she could not tell from Mrs. Stanley's books what part of Mrs. Stanley's income came from the GMC truck. Both appellee and Mrs. Vance testified appellee did not keep any books on the truck. Moreover, when Mrs. Vance was testifying from the books of Mrs. L. M. Stanley, she did not, and apparently could not, identify any payment made to appellee or for appellee on account of the earnings of the GMC truck, except payments on the

truck made to Yellow Manufacturers Acceptance Corporation, which entries merely showed credits to that account.

Appellant complains of the refusal of the lower court to grant defendant's instruction No. 10. This instruction was properly refused. It told the jury that if appellee leased the truck to Mrs. L. M. Stanley under an agreement whereby Mrs. Stanley would use the truck and pay the payments thereon and its operating expense out of the income produced by the truck, and the remaining income would be divided between appellee and Mrs. Stanley, the truck was then under a bailment lease in violation of the terms of the policy.

If such a lease agreement is a bailment lease, appellant has cited no case so holding. A bailment lease is usually defined as a legal method by which one desiring to purchase personal property but is unable to pay therefor at the time, may secure possession of the property with right to use and enjoy it as long as he pays a stipulated rental and becomes the absolute owner, after completing installment payments, on payment of an additional sum, which may be nominal. See cases, 5 Words & Phrases, page 73. It seems to be the rule that the right to become the absolute owner is essential to a bailment lease.

Several other assignments are based on the contention that the soliciting agent, Dotson, could not waive provisions of the insurance contract after the contract was written. Both parties imbodied statements in their instructions to the effect that if Dotson knew of a violation of the policy it constituted a waiver on the part of appellant. Since the case is to be reversed on other grounds, it is sufficient to note that under Travellers Fire Insurance Company v. Price, 169 Miss. 531, 152 So. 889, and other cases, a soliciting and collecting agent, such as Dotson in this case, is without power to modify an insurance contract or waive its con-

ditions. If Dotson had any knowledge of the transfer, if any, of the title to the truck to Mrs. Stanley, it came to him after the contract of insurance had been made. It is a different matter when information is given the agent when the application is made and knowledge thereof imputed to the insurer. See Calvert Fire Insurance Company v. Swain, 224 Miss. 85, 79 So. 2d 537.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Arrington* and *Ethridge, JJ.,* concur.