PEERLESS INSURANCE COMPANY *v.* ST. LAURENT

No. 42692      June 3, 1963      154 So. 2d 135

*Rae Bryant,* Gulfport, for appellant.

*Tonsmeire & Mannino,* Biloxi, for appellee.

KYLE, J.

This case is before us on appeal by Peerless Insurance Company, defendant in the court below, from a judgment of the Circuit Court of Harrison County, affirming a judgment of the county court rendered in favor of Simon St. Laurent, plaintiff, in the sum of $1,770 for loss of an insured automobile and its equipment covered by a family combination automobile policy issued to the plaintiff by the defendant and alleged to have been stolen during the policy period.

The case was tried before the county judge on an agreed statement of facts, as follows:

It was stipulated and agreed by and between the parties hereto that on or about August 2, 1960, the plaintiff purchased from the defendant a family combination automobile policy, No. ACF, 92-72-07, for a policy period of twelve months. The automobile insured was a 1958 Buick Super Riviera Hardtop Coupe, bearing Identification No. 5E4016805. The policy provided, among other coverages, a coverage designated as comprehensive, as shown by a copy of the policy attached to the plaintiff's declaration.

It was further stipulated that, on or about May 26, 1961, the plaintiff entrusted his son-in-law, who was also his employee, one Collie Holton, Jr., with the possession of the insured automobile for the purpose of proceeding to Indiana to pick up a trailer to be used in the plaintiff's business, and permission was granted to the said Collie Holton, Jr., to stop in Columbus, Ohio, and visit his mother while enroute to pick up the trailer. Collie Holton, Jr., left the City of Biloxi, accompanied by his wife, the plaintiff's daughter, and plaintiff's two grandchildren. While Collie Holton, Jr., was in Columbus, Ohio, visiting his mother the said Collie Holton, Jr., left his wife and two children at his mother's home, telling the wife that he was going to the cleaners to pick up some clothes. This was on or about May 29, 1961. Collie Holton, Jr. never returned with the automobile, nor has he been heard from since that time by either the plaintiff or the wife of Collie Holton, Jr. The car in question belonged to and was the property of the plaintiff.

It was further stipulated and agreed by and between the parties that on or about May 29, 1961, the value of the automobile was $1,600; that the automobile was equipped with special equipment such as a special trailer hitch, an electric brake outlet to extend back to the trailer, and other items, all valued at $140, making a total of $1,740; and that the amount of money expended

by the plaintiff was $30 for rental of another automobile during the period of time provided for under Part III, Supplementary Payments, Paragraph (2) of the policy. It was further stipulated and agreed that the plaintiff complied with all of the terms of the policy in reference to his obligation after his being notified of the failure of the son-in-law and employee to return the automobile, including the notifying of the authorities. And, finally, it was stipulated and agreed by and between the parties that the automobile had been found at the time of the trial and was presently at the Woodrow Store and Garage, Woodrow, Colorado, and that the plaintiff had been so notified by the defendant.

It appears from the record that the policy sued on was a combination automobile policy covering the above described Buick automobile, which provided in Part III, in addition to other coverages, the following:

"COVERAGE D (1) — Comprehensive (excluding collision) — (2) Personal Effects:

(1) To pay for loss caused other than by collision to the owned automobile or to a nonowned automobile. For the purpose of this coverage, breakage of glass and loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion shall not be deemed to be loss caused by collision. * * *
"* * *

"COVERAGE G — Theft; To pay for loss to the owned automobile or to a non-owned automobile caused by theft or larceny.
"* * *

"*Supplementary Payments*: In addition to the applicable limit of Liability: (a) to reimburse the insured for transportation expenses incurred during the period commencing 48 hours after a theft

covered by this policy of the entire automobile has been reported to the company and the police, and terminating when the automobile is returned to use or the company pays for the loss; provided that the company shall not be obligated to pay aggregate expenses in excess of $10 per day or totaling more than $300 * * *.

" * * *

"*Definitions*: * * *

" 'loss' means direct and accidental loss of or damage to (a) the automobile, including its equipment, or (b) other insured property."

The appellant has assigned and argued only one point as ground for reversal of the judgment of the lower court, and that is that the circuit court erred in affirming the judgment of the county court. The appellant's attorney says that we are dealing here with an "embezzlement" and not a "theft", and that the policy of insurance affords no coverage for embezzlement, or the wrongful conversion of property, where the original taking was lawful or with the consent of the owner.

It is the appellee's contention that the contract of insurance was prepared by the insurance company and should be construed most strongly against the insurer and in favor of the insured, and that the words "theft" or "larceny", as used in the policy, should not be given a technical or legalistic construction, but should be deemed to include "embezzlement." The appellee admits that under our several statutes dealing with the word "larceny", the word means "the felonious taking and carrying away of the property of another," the "animo furandi" or felonious taking being an essential part of the crime; and that the word "theft", as defined in Black's Law Dictionary, is "the fraudulent taking of corporeal personal property belonging to another, from his possession, or from the possession of some person

holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking.'' But it is argued that, if it was the intention of the appellant to restrict the coverage for loss caused by both ''theft or larceny'' to losses caused by acts which fall within the technical definition of the words as defined in the criminal code, such intention should have been expressly stated in the policy.

We think there was no coverage under the policy for the wrongful conversion of the automobile by the appellee's son-in-law and employee. The facts set forth in the agreed stipulation, if incorporated in an indictment, would be sufficient to support a charge of embezzlement under Section 2115, Code of 1942, Rec., but would not be sufficient to support a charge of larceny for the reason that the automobile had been entrusted to the possession of the employee by the owner and there was a lack of the element of trespass which is essential to proof of larceny.

In the early case of Beatty v. State (1883), 61 Miss. 18, the Court, in an opinion written by Justice Cooper in defining the elements of ''larceny'' said: ''If one unlawfully takes possession of the personal property of another, not intending at the time to steal, and subsequently converts it, intending to steal, this is larceny, for there is then both a trespass and a fraudulent conversion with intent to steal. Commonwealth v. White, 11 Cush. (Mass.) 483; Regina v. Riley, 14 Eng. L. & Eq. 544; Griggs v. State, 58 Ala. 425 (29 Am. Rep. 762). But if the actual taking is lawful and bona fide, a subsequent fraudulent conversion is not larceny, because there is no trespass, and every larceny includes a trespass. Tanner v. Commonwealth, 14 Gratt. (Va.) 635; 2 Bish. Crim. Law, Sec. 799, and authorities there cited.

In the more recent case of Jackson v. State (1951), 211 Miss. 828, 52 So. 2d 914, the Court again pointed out

the differences between the offenses of "larceny" and "embezzlement" as follows: " 'Larceny', as distinguished from other offenses, is the taking and carrying away from any place, at any time, of the personal property of another, without his consent, by a person not entitled to the possession thereof, feloniously, with intent to deprive the owner of his property permanently, and to convert it to the use of the taker or of some person other than the owner; * * *. 52 C.J.S., Larceny, Sec. 1, p. 779. 'Embezzlement' differs from larceny in that it is the wrongful appropriation or conversion of property where the original taking was lawful, or with the consent of the owner, while in larceny the taking involves a trespass, and the felonious intent must exist at the time of such taking. 29 C.J.S., Embezzlement, Sec. 4, p. 672.''

"The general rule applicable to the crime of larceny, that neither a bailee nor an employee who has been given possession of property is guilty of larceny in subsequently converting the property to his own use, has been applied in a number of cases so that the employee's or bailee's wrongful conversion of the vehicle entrusted to him was held not to be within the coverage of an automobile theft policy * * *." 7 Am. Jur. 2d p. 358, Automobile Insurance, Sec. 50; Gunn v. Globe & R. F. Ins. Co. (1919), 24 Ga. App. 615, 101 S.E. 691; Ledvinka v. Home Ins. Co. (1921), 139 Md. 434, 115 A. 596, 19 A.L.R. 167; Stewart v. Home F. & M. Ins. Co. (1924), 2 N.J. Misc. 515, 124 A. 773; California Ins. Co. v. Security State Bank (1929), 136 Okla. 271, 277 P. 591; Sparrow v. American Fire & Casualty Co., 243 N.C. 60, 89 S.E. 2d 800.

In Sparrow v. American Fire & Casualty Co., supra, the Court held that under an automobile theft policy containing a comprehensive coverage clause which bound the insurer to pay for "any direct and accidental loss of or damage to the automobile," the loss or damage

must be both "direct" and "accidental," and where the employee used the employer's automobile in the employer's business and left the city and state without the employer's knowledge or consent, there was no element of "accidental" loss or damage within the meaning of the policy. The Court also held in that case that, under the facts stated, the damage to the automobile was not covered by the theft clause of the policy which bound the insurer to pay for loss or damage to the automobile caused by theft, larceny, robbery, or pilferage.

The appellee's attorney has cited in support of the judgment of the lower court, the case of National Fire Insurance Co. of Hartford v. Slayden, et al. (1956), 227 Miss. 285, 85 So. 2d 916. But the decision in that case is not controlling here. In that case the record showed that the taking and use of the machine was unauthorized by the owner and was without the knowledge or consent of the owner; whereas in this case the automobile was taken with the knowledge and consent of the owner.

■■ ■ We are not unmindful of the rule that the provisions of an insurance policy, where ambiguous or uncertain, are to be construed most strongly against the insurer, and that the rule thus stated has frequently been viewed as requiring the holding that the conversion of an automobile by the insured's employee or bailee amounts to a "theft" within the coverage of the policy. There are also cases in which the courts have held that where under applicable criminal statutes the conversion of an automobile by a bailee or an employee amounts to larceny, such conversion is within the coverage of the policy. But this Court has held in many cases that, if the insurance contract is plain and unambiguous, it should be construed as written and like any other contract. Griffin v. Maryland Casualty Co., 213 Miss. 624, 57 So. 2d 486; Continental Casualty Co. v. Hall, 118 Miss. 871, 80 So. 335; Georgia Casualty Co. v. Cotton Mills Products Co., 159 Miss. 396, 132 So. 73; Brother-

hood of Railroad Trainmen v. Bridges, 164 Miss. 356, 144 So. 554; Farmers Mutual Insurance Association v. Martin, 226 Miss. 515, 84 So. 2d 688; National Bankers Life Ins. Co. v. Cabler (1956), 229 Miss. 118, 90 So. 2d 201. ██ █ We think the clause of the insurance policy in this case which binds the insurance company "to pay for loss of the owned automobile * * * caused by theft or larceny," is plain and unambiguous; and the facts agreed to, in our opinion, do not bring the case within the meaning of "theft or larceny." Sparrow v. American Fire & Casualty Co., supra.

For the reasons stated above, the judgment of the lower court is reversed, and judgment will be entered here in favor of the appellant.

Reversed and judgment rendered in favor of the appellant.

*Lee, P. J., and Arrington, Ethridge and Rodgers, JJ.,* concur.