Morris, D.B.A. Magnolia Trucking Company *v.*

American Fidelity Fire Insurance Company

No. 43393 April 5, 1965 173 So. 2d 618

*Thomas W. Crockett, Jr., Overstreet, Kuykendall, Perry & Phillips,* Jackson, for appellants.

300

*Lipscomb & Barksdale,* Jackson, for appellee.

Jones, J.

Appellant, Morris, sued appellee, American Fidelity Fire Insurance Company, on an insurance policy for the loss of a trailer and tractor allegedly by theft or em-

bezzlement. The case was tried in the Circuit Court of the First Judicial District of Hinds County, Mississippi, before the judge without a jury. He rendered a verdict for the insurance company and Morris appeals here.

The facts are these: In August 1961 the appellee insurance company issued a policy to James P. Bailey and Ed Morris, doing business as Magnolia Trucking Company, the pertinent provisions of which for this inquiry were:

## INSURING AGREEMENTS

Coverage D — Theft (Broad Form)
To pay for loss of or damage to the automobile, hereinafter called loss, caused by theft, larceny, robbery or pilferage.

## EXCLUSIONS

This Policy does not apply . . .
(b) under any of the coverages, if the automobile is or at any time becomes subject to any bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance not specifically declared and described in this policy;
* * * *

(g) under coverages A and D, to loss due to conversion, embezzlement or secretion by any person in possession of the automobile under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance.

In September 1961 Morris and Bailey executed a conditional sales contract, covering the trailer and tractor in question, in favor of one Frank Herndon. This transfer or conditional sales contract was not noted upon the policy. Later Bailey was deleted from the policy and it remained in the name of Ed Morris.

Herndon is pursuance to his conditional sales contract operated the tractor and trailer until about January 1962, at which time, desiring to be at home with his wife, who was pregnant, until after the advent of the child, he agreed with one Frank Peters that Peters would operate the tractor and trailer until he, Herndon, could return to work. Peters was to pay all of the expenses of operation and if there should be any profit, it was to be divided between him and Herndon. As stated, this was a temporary agreement. Peters never agreed to buy the truck, nor did Herndon agree to sell him the truck.

Morris knew about Herndon's arrangements with Peters and received checks from him (Peters) to apply on the installment payments due under the conditional sales contract and also on the insurance premium.

When the policy was issued, a down payment was made on the premium and the balance financed through a local bank.

Peters operated the truck from the first part of January 1962 until sometime in March of that year. In March 1962, Herndon received a telegram from Peters which read: "Lost truck and trailer on Route 66, owner had cargo. Lucky — will see you when doctor releases me." This telegram came from Jacksonville, Florida.

Since the receipt of said telegram, nobody connected with the case has seen or heard of Peters or the tractor. The proof showed the telegram was dated the first part of March, but not the exact date. On or about March 15 near Raleigh, Mississippi, Morris found the trailer which had been abandoned, and parts of which had been removed. The nameplate on the trailer had been changed; the serial number had been removed, and someone had put a different nameplate apparently in an effort to change the identity. However, there was a number stenciled on the frame that was not altered nor marred, by which the plaintiff could identify it as his trailer.

Mississippi Truckers Insurance Agency signed the policy and was state agent for the appellee. Appellee had no other agency in the state holding written appointments.

However, the Mississippi Truckers Insurance Agency had circularized the licensed insurance agents in the state of Mississippi, advising that the Truckers Insurance Agency could issue these specific kinds of policies and requesting that those agents who were unable to issue same, forward such business to the sender, Truckers Insurance Agency. In compliance therewith, Mr. Joe Ellis Joseph of Jackson, Mississippi, a duly authorized insurance agent, worked with the said state agents. He took the application for this policy, as well as applications for other policies. He did not sign the policies for the company, but he handled them under a brokerage arrangement whereby he received half of the commission which was payable to the said Truckers Agency. He had a number of these policies issued, had delivered them, had deleted tractors and trailers from a policy when requested and substituted others for them, and had same cancelled. He also collected premiums. In other words, all the dealings that the insured had regarding said policies so issued, and the policy here involved, were had with Joseph who in turn handled them with the state agency of the insurance company. There had been numerous policies so issued. The policy here in question was issued and delivered in that manner and when delivered, bore on it a notation reading: ''In case of loss or any change in this policy, notify Joe Ellis Joseph, Inc., General Insurance, Bonds, Deposit Guaranty Bank Building, P. O. Box 822, Phone — FL 2-0801.''

The policy had other coverages than the theft coverage hereinabove mentioned. It was shown that the said Joseph submitted the application to the state agency who signed the policy and Joseph himself delivered it.

None of the companies he represented under written appointment wrote this particular kind of insurance. He also collected the initial payment on the premium, and after the policy was written, had a conversation with one of the insured under which he learned of the sale of the truck here insured to Mr. Herndon. Mr. Bailey talked to him about it and he said that at that time, he Joseph, told him they should take the truck off the policy or change the policy to cover the transaction they had made. Bailey advised him to come to his office that afternoon where he went, and Bailey told him they had sold on a lease purchase agreement. The agent asked to see the contract and Bailey said he would show it to him later. The agent said he never saw the contract, but he did know that one of the tractors and trailers had been sold. He advised Mr. Bailey that there should be a change made in the policy to protect them under liability and on the cargo and other matters. He was requested, he said, by Mr. Bailey not to change it because of the bank who was the loss payee under the policy, and the agent assumed they didn't want to make a change because they didn't desire the bank to know they were selling mortgaged property. He denied he had any authority to bind the company, but said he had to turn to someone in Mississippi Truckers Agency. He claimed he was acting for Mr. Bailey and Mr. Morris and not the company.

However, he admitted he transmitted the application, delivered the policy, accepted premiums and the proof of loss in the case; and that shortly after March 15 he called the Truckers Agency, told them of the loss, and asked that they send the adjusting form, and that they did transmit the proof of loss. Prior to that time and after the knowledge of the conditional sales contract, he was issued checks to apply on the balance of the premiums on the policy and accepted those checks. Also the agent testified that sometime after the trailer was found, he advised Mr. Morris to put it on the road

or sell it because the company up to that time had denied liability, and he, Joseph, stated to them that he would verify its condition. The agent testified that he had done business in this manner with the Truckers Agency for quite a length of time and still does business with them under that arrangement. He stated that the premium payment could be directed to the Truckers Agency or to himself — that it could be paid to him personally and he would remit it on a monthly basis. Some policies secured by him had been cancelled and returned to the Mississippi Truckers with his, Joseph's, stickers on them and he had never received any complaint about the stickers.

The insured did not know the Mississippi Truckers and the Mississippi Truckers did not know him. All changes in the policy had to come through Joseph to the Mississippi Truckers. With reference to exclusion (b) of the policy hereinbefore copied, the circuit judge, trying the case without a jury, said:

> The plaintiff contends that the transaction with Herndon (sale by Morris to Herndon) was known and acquiesced in by the insurance agent. Therefore, there was a waiver of the exclusive (sic) provisions. The proof seems to support this contention. However, the property when it disappeared, was not in the possession of Herndon, but was in the possession of Peters. According to the declaration and proof in the case unquestionably Peters was a simple bailee.
>
> . . . .
>
> It appears that what we have here is a clear case of embezzlement or conversion by a simple bailee, to whom possession of the property had been voluntarily let by the conditional sales purchaser.

He held that the waiver or estoppel claimed by the plaintiff did not extend beyond the transaction of the sale by Morris to Herndon, and that there was therefore no liability.

Under the judge's ruling, it was held by him that the evidence was sufficient to sustain a waiver of the said exclusion (b).

It is contended by appellee that exclusionary clause (b) was a provision that could not be waived under our Mississippi decisions which hold that an agent cannot waive those things which extend the coverage of the policy or extend or change the risk thereof.

 ██ ██ In the opinion of this Court, however, said exclusionary clause (b) is a forfeiture clause, and the cases hold that a forfeiture clause may be waived. In 45 C. J. S. *Insurance* § 674 (b) (1946) it is stated: "The company may waive, or be estopped to rely on, provisions of the policy relating to assignment of the policy without the consent of the insurer; sole and unconditional ownership, encumbrances, and change of ownership of insured property . . . .". Under the last statement regarding change of ownership and under Note 44, there are numerous cases cited from numerous states of the United States.

In *American Ins. Co. v. Dean,* 243 S. W. 415, 417, (Mo. App. 1922) the court said: "We find it unnecessary to determine whether the defendant in fact retained such insurable interest. This for the reason that the policy provision which annulled the policy in the event of a transfer of the title was for the benefit of the company, and could be waived by it."

In *Thompson v. Patrons Mut. Fire Ins. Ass'n,* 231 Iowa 168, 300 N.W. 642 (1941) it was held as shown by the third syllabus, "Though by terms of fire policy it is provided that change of ownership of insured property will defeat rights of insured or assignee of policy, insurer may consent to carry risk notwithstanding change of title." And in Syllabus 4: "Where, with knowledge of facts constituting forfeiture of fire policy, insurer continues to treat contract as of binding force and in-

duces insured to act in that belief, the forfeiture is 'waived.' ''

Another Iowa case to the same effect — *Neiman v. City of New York Insurance Co.,* 202 Iowa 1172, 211 N.W. 710 (1927), was cited by the court and it holds the same thing.

In *Fuessler v. Chautauqua County Patrons' Fire Relief Ass'n,* 260 App. Div. 991, 23 N. Y. S. 2d 288 (1940) the first syllabus reads: ''A mutual assessment company could waive condition making fire policy void because insured's interest was not unconditional and sole ownership.''

In *Collard v. Universal Automobile Ins. Co.,* 55 Idaho 560, 45 P. 2d 288 (1935) it is held as shown by tenth syllabus, ''Insurance company may waive any provision in policy for its protection by acts or conduct of its agent, within scope of their authority, and be estopped from availing itself of violation of terms of policy, notwithstanding clauses in policy that company shall not be bound by any such conduct or representations of its agent.'' And Syllabus 11: ''Insurance company may elect, through agent, to continue insurance with new owner, although policy provides it should be void for change of ownership.''

 ██ ██ Mississippi's rule is stated in *Employers Fire Insurance Co. v. Speed,* 242 Miss. 341, 346, 133 So. 2d 627 (1961) wherein Justice Gillespie said:

> This Court follows the general rule that waiver or estoppel can have a field of operation only when the subject matter is within the terms of the policy, and they cannot operate radically to change the terms of the policy so as to cover additional subject matter. Waiver or estoppel cannot operate so as to bring within the coverage of the policy property, or a loss, or a risk, which by the terms of the policy is expressly excepted or otherwise excluded. An insurer may be estopped by its conduct or knowledge from insisting

on a forfeiture of a policy, but the coverage or restrictions on the coverage cannot be extended by the doctrines of waiver or estoppel.

In fact, our own Court in the case of *Camden Fire Ins. Ass'n v. Koch,* 216 Miss. 576, 63 So. 2d 103 (1953), in a decision rendered by Chief Justice McGehee, while recognizing the holdings of this Court that the authority of the local agent in the issuance of policy is applicable only to the acts of such agent before and up to and including consummation of the insurance, and the acts of such agent in the examination and adjustment of losses (*Old Colony Insurance Co. v. Fagan Chevrolet Co., Inc.,* 246 Miss. 725, 150 So. 2d 172 (1963)) held that the agent who has authority to fill out and deliver an insurance policy in this state and especially for a foreign insurance company with whom the applicant for insurance has no dealings other than through such agent, has all the powers of a general agent of the company when issuing such policy and may waive any of their provisions. In that case the property covered by the insurance policy had changed hands and the agent was requested to endorse the policies to the new purchaser and neglected to do so. This Court held that since the agent to whom the request had been made had the authority to issue the policy, that he was in the same position as if it were a request for a new policy which the agent had authority to issue, and held that under such circumstances the provision relative to the change of ownership had been waived.

But it is said that Mr. Joseph was not the agent of this company. This contention has been answered by the Mississippi Court in *Bankers Fire & Marine Insurance Co. v. Dungan,* 240 Miss. 691, 694-696, 128 So. 2d 544 (1961) wherein in an opinion written by Justice Ethridge this Court stated:

The questions in this case are whether an insurance agent, who is unable to write a particular fire policy

in his own company, and who procures one in another company through its agent, under a course of dealings between them, acts as the agent of the insurer and not of the insured; and if so, whether the first agent's knowledge of prior insurance on the property waives the "other insurance" clause of the new policy. We hold that both of these questions must be answered in the affirmative, and therefore affirm the judgment of the Circuit Court of Tallahatchie County. . . .

Burnett was not a formally designated agent of appellant, Bankers Fire & Marine Insurance Company. However, in early 1957 he worked out an oral arrangement with Robert F. Carpenter of Greenwood, a general agent representing appellant, by which, if Burnett's company could not write a policy, and if one of Carpenter's companies could, he would get Carpenter to write the coverage. Working together, Burnett obtained and Carpenter wrote 25 to 30 policies during the next two years. Burnett would get the description of the property, other pertinent information, collect the premium, and remit it to Carpenter. Carpenter then wrote the policies and remitted the premiums, less commissions, to the company. He then sent the policy to Burnett, who would deliver it to insured. Under this arrangement, Carpenter also remitted one-half of all commissions to Burnett. This agreement had been in operation at least two years before the Dungan policy was written by Carpenter. Without Dungan's knowledge, Burnett called Carpenter, who wrote the policy in accordance with these prior arrangements, and sent it to Burnett, whose office manager personally handed it to Dungan. The policy was dated January 27, 1959. On April 4, 1959, the insured's house and contents burned. The policy contained a provision that other insurance covering the property was prohibited, unless otherwise stated thereon; and unless permitted, the existence of other

insurance would invalidate Banker's policy. After the fire, Carpenter learned of the additional insurance. Appellant refused to pay Dungan. Appellant asserts that Burnett was not its agent, and it cannot be estopped from pleading the "other insurance" clause, since any knowledge of it by Burnett could not have been that of its agent, Carpenter, and of appellant. It is asserted that Burnett was the insured's agent, and not the agent of the insurer. The jury returned a verdict for plaintiff.

The judgment will be affirmed on two grounds: (1) For this transaction, Burnett was the agent of the company under the general law of agency; and (2) he was the agent of the company under the provisions of Miss. Code 1942, Section 5706.

We agreed with the circuit judge that exclusionary paragraph (b) was waived.

However, appellee argues that it was held by the circuit judge that there was an embezzlement by a simple bailee and that embezzlement is not covered under coverage (d) construed with exclusion (g).

With this argument we do not agree. The exclusion clause provides against loss due to conversion, embezzlement or secretion by any person in possession of the automobile under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance. It is not necessary for us to discuss or define a conditional sale, purchase agreement, or mortgage. A bailment lease has been defined by this Court in *Motors Insurance Co. v. Stanley*, 237 Miss. 681, 690, 115 So. 2d 678 (1959):

Appellant complains of the refusal of the lower court to grant defendant's instruction No. 10. This instruction was properly refused. It told the jury that if appellee leased the truck to Mrs. L. M. Stanley under an agreement whereby Mrs. Stanley would use the truck and pay the payments thereon and its operating expense out of the income produced by the truck, and

the remaining income would be divided between appellee and Mrs. Stanley, the truck was then under a bailment lease in violation of the terms of the policy. If such a lease agreement is a bailment lease, appellant has cited no case so holding. A bailment lease is usually defined as a legal method by which one desiring to purchase personal property but is unable to pay therefor at the time, may secure possession of the property with right to use and enjoy it as long as he pays a stipulated rental and becomes the absolute owner, after completing installment payments, on payment of an additional sum, which may be nominal. See cases, 5 Words & Phrases, page 73. It seems to be the rule that the right to become the absolute owner is essential to a bailment lease.

Appellee relies heavily on the case of *Peerless Insurance Co. v. St. Laurent,* 247 Miss. 134, 154 So. 2d 135 (1963). That case is easily distinguishable from the present case, however, because the coverage under said policy only applied to theft and there was no exclusionary clause such as clause (g) contained in the present policy, and the coverage of theft in said policy was not the broad form.

 █ Of course, it is elemental that the provisions of an insurance policy when ambiguous are to be construed against the insurance company.

When we construe coverage (d) and exclusion (g) under the present policy, it is apparent that the company intended to cover embezzlement or conversion by any person not within the class described in the said exclusionary clause. Otherwise, said exclusionary clause would have been useless and meaningless. The only other question is whether the words "other encumbrance" would include the arrangement as made between Herndon and Peters. We think this question has been settled by a number of decisions of the courts.

An examination of the word "encumbrance" in Words & Phrases shows that it deals with land, but requires "some interest" in the property.

In *Williams v. GMAC,* 61 Ga. 750, 7 S. E. 2d. 402 (1940) the policy had a provision saying that it did not cover "wrongful conversion, embezzlement or secretion by a mortgager, vendee, lessee, or other person in lawful possession of the insured property under a mortgage, conditional sale, lease, or other contract or agreement, whether written or verbal." The court said: "The quoted provision of the policy excepts theft or conversion by one having some interest in the property. The words 'or other contract, written or verbal,' include only things similar in character to those specifically named, and a naked bailee has no such interest as a party to a mortgage, conditional sale contract, or lease."

Again in *Great American Ins. Co. v. Gusman,* 80 Ga. App. 471, 56 S. E. 2d. 319 (1949) the opinion states:

> Where in a policy of insurance, covering "loss of or damage to * * * (an) automobile caused by theft, robbery or pilferage," it is provided that the risk shall not include "loss due to conversion, embezzlement by any person in lawful possession of the automobile under a bailment lease, conditional sale, mortgage or other encumbrance," this provision excepts, from the risk covered, the loss of the automobile due to conversion, embezzlement or secretion by one having some interest in the property. Williams v. General Motors Acceptance Corp., 61 Ga. App. 750, 751, 7 S. E. 2d. 402; and . . . .

In *Firemans Fund Ins. Co. v. Boyd,* 45 So. 2d 499 (Fla. 1950), the policy covered "loss of or damage to the automobile caused by theft, larceny, robbery or pilferage," and then it specifically excluded from that coverage loss or damage due to "conversion, embezzlement or secretion by any person in lawful possession of the automo-

bile under a bailment lease, conditional sale, mortgage or other encumbrance.'' The Florida Court held that that court is committed to the rule that a contract of insurance is to be construed liberally in favor of the insured and strictly against the insurer where the meaning of the language used is doubtful, uncertain, or ambiguous. There the court said: ''And where, as here, a policy under a theft provision described as 'Broad Form' provides coverage for loss or damage due to 'theft, larceny, robbery, or pilferage,' it requires no great liberality of construction to hold that the insurer intended to provide coverage for losses in addition to those which are, by strict common-law definition, larceny.'' An employee had converted the automobile in that case and the Court further said: ''The policy did not exclude from its coverage loss or damage due to theft by persons in the employment, service or household of the insured, although many present-day insurance contracts of the type here in question do make such exclusions.''

The court held that the evidence was sufficient to prove theft within the meaning of the policy, and said:

> The cases cited by appellant involving the conversion of an automobile by a bailee are not here in point, as Howard was in no sense the bailee of the truck. The truck came into his custody by virtue of his employment by plaintiff as a truck driver, and he had not that possession, nor that contractual obligation with respect to the thing bailed, characteristic of a bailment.

In *American Fire & Casualty Co. v. Barfield,* 81 Ga. 887, 60 S. E. 2d 383 (1950) the same rule is announced in the third syllabus, but under a condition such as the present exclusion clause, that such exclusion clause refers to a loss due to conversion by one having an interest in the property.

314

*American Ins. Co. v. Burson*, 213 F. 2d 487 (5th Cir. 1954) involved a similar insurance contract and the court in that case followed the case of *Boyd*.

It is our opinion that exclusionary clause (g) does not prevent recovery in this case.

■■ ■ ■ We hold in accord with the decisions cited that the word "encumbrance" means a person having possession with some interest in the property. Under the case hereinbefore cited of *Motors Insurance v. Stanley*, 237 Miss. 681, 115 So. 2d 678 (1959) the man Peters was not in possession under a bailment lease and the facts showing the extent of his possession definitely show that he had no interest in the property, but was simply operating the trailer and tractor temporarily until Herndon could return. We think the court was in error in holding that his, Peters', possession was such as to exclude recovery.

We are reversing the case, entering judgment here for the plaintiff, but remanding it to the lower court for the ascertainment by such court of the amount of judgment which should be rendered in favor of the plaintiff.

Reversed, judgment here for appellant and remanded for determining amount of judgment.

*Lee, C. J., and Ethridge, Gillespie and Patterson, JJ.,* concur.