Hillsborough, {
Feb. 6, 1934. {

MARION C. HORTON, *Adm'x*

*v.*

EAGLE INDEMNITY INS. CO. & *a.*

*Thorp & Branch* (*Mr. Thorp* orally), for the plaintiff.

*Devine & Tobin* and *O'Connor & Saidel* (*Mr. Tobin* orally), for the defendants.

ALLEN, J.  The plaintiff's authority to carry on the intestate's business is not made a point of issue and hence is assumed.  But it was her duty to conduct it in a manner that would lead to no preference for any of the intestate's general creditors, and the rights of the defendants as such creditors must correlate with that duty.  None of them has any rights in that character which will bring about for it more than its proportionate share towards payment of its claim. "It is illegal for the administrator of an insolvent estate to satisfy the claims of part of the creditors." *Blaisdell* v. *Peavey*, 79 N. H. 243, 244.

The insurer's right to collect from the policy-holders unpaid premiums charged to the agency depends upon the relations between the insurer and the agency.  By the contracts the agency was obligated to pay all premiums.  So far as it did pay them, it alone had the right to collect them from the policy-holders.  Paying them, it might proceed against the policy-holders either on the theory of subrogation or on their direct liability for the payment of money at their request.  The payment entitled it to be treated as the assignee of the insurer's rights through subrogation, and at the same time amounted to a loan to the policy-holders.  The agency in this respect properly represented both insured and insurer.  Responsibility through promise to the insured to obtain and maintain insurance is consistent with its obligations to the insurer.

In respect to premiums unpaid either by the policy-holder to the agency or by the agency for him to the insurer the right to collect them after the agency is terminated is not definitely arranged by the express terms of the contracts.  Their implied terms, as within the parties' contemplation and as shown by the effect of the express terms and by the course of business between the parties, are therefore to

be ascertained. The course of business is of aid as a practical construction in disclosing the common understanding the parties had of the meaning of the contracts and the results they were expected to accomplish. The legal incidents arising from the relationship and either upon performance or upon breach of the contracts are within their contemplation and to be regarded as implied terms.

The premium itself is a debt due only the insurer, and until the insurer has disposed of its rights therein it has full legal and equitable title thereto. But disposal of its rights may be brought about through the operation of rules of law applicable to its contracts and conduct in pursuance thereof as well as by express statement and terms. If the contracts thus show that the agency bought the insurer's right to collect the premiums on the policies it issued, they were the agency's property after the agency was terminated.

The insurer's assignment of a premium may be conditional or absolute. Its book entry of a charge of the premium to the agent, although made with the agent's consent, is not enough to show an unrestricted assignment. It is no acknowledgment by the insurer that the premium has been paid. *Brown* v. *Insurance Co.*, 59 N. H. 298, 309. But the insurer's acceptance of the agent's individual credit as a payment of the premium is equivalent to its actual payment as between insurer and insured. *Gaysville &c. Co.* v. *Insurance Co.*, 67 N. H. 457, 458. Authority elsewhere supports this view. *Buckley* v. *Insurance Co.*, 188 N. Y. 399; *Lebanon &c. Ins. Co.* v. *Company*, 113 Pa. St. 591; *Fidelity &c. Co.* v. *Willey*, 80 Fed. Rep. 497; *White* v. *Insurance Co.*, 120 Mass. 330; *Wytheville &c. Co.* v. *Teiger*, 90 Va. 277. The logical deduction is that since the insurer may not claim non-payment of the premium, it belongs to the agent. Otherwise the policy-holder escapes.

The deduction accords with the intent of the parties evidenced by the agency contracts, in the construction of which the course of business thereunder is elucidating. The agent's agreement to be charged with the premiums was intended to be of their purchase unless it was of suretyship for the policy-holders. If he did not purchase the premiums but only guaranteed their payment, the policy-holders remained the insurer's debtors. Until the surety pays, the insurer parts with no rights. The surety's agreement is security for the policy-holders' primary debt to the insurer. But if the insurer accepts the agent's agreement in substitution for the policy-holders' liability to it, the agreement is not one of suretyship but the right to collect the premiums is thereby sold to the agent.

As between purchase and suretyship, in no instance was payment of any premium sought by the insurer while the agency ran except from the agency. It looked alone to the agency for payment. It carried an account with the agency made up of charges and credits, and the contract called for periodic settlements of the account. Payment of the account was by check drawn against the agency's single bank deposit account. There were no special deposits in segregation of premiums as separate trust funds. The agency acted as a general debtor and not as a fiduciary.

The agency had the right to extend credit for the premiums. Thereby it might deal with the policy-holders on a personal basis. It might carry an open account with each of them, charging in it the premiums for the policies of all the companies in which the policy-holder was insured, as well as possible items of a different kind. The policy-holder in settling the account was entitled to consider the agency his creditor, with no liability to the insurer.

This course of practice was known to the insurer and maintained with its consent. It follows that its acceptance of the agency's credit for the premiums was intended to have full substitutional effect. Retention by the insurer of right to collect premiums on policies issued by the agency during its continuance would be inconsistent with the agency's permitted practices under the running of the agency contract. The insurer, looking alone to the agency for payment of the premiums, assigned all of its interest in them. The facts found manifest their sale. Neither the agency's failure to discharge its liability to the insurer upon the credit given it nor the termination of the agency restored any right to the insurer to collect premiums unpaid by the policy-holder. The right was unconditionally and unreservedly transferred to the agency.

Having thus bought the premiums on all policies the agency might issue, it was under no fiduciary obligation to account for them. They belonged to it to deal with as it pleased. The clause in some of the contracts that premiums less commissions should be remitted to the insurer upon their payment to the agency, does not alter the situation. The clause is merely a provision for fixing a special date for payment of the agency's debt to the insurer in respect to premiums paid the agency. Nor does the clause in one of the contracts that until remittance of the amount due premiums collected by the agency were to be held as the property of the insurer and "as a fiduciary trust" make a difference here. The course of dealings between the parties shows a waiver or cancelation of the clause. The contract was in

force for over three years and the manner of payments and the business methods of the agency during the period were within the insurer's notice. The understanding and expectation of both parties that observance of the clause was to be ignored, is thus decisively indicated. The practices employed by the agency and accepted by the insurer amounted to a parol alteration or cancelation of this term of the contract, and such a change is valid. *Warren* v. *Dodge*, 83 N. H. 47, 48, and cases cited.

The statute (P. L., c. 276, s. 7) permitting an insurer to cancel a policy for non-payment of the premium without tender of the unearned part of it, does not rest upon any theory that its right to collect the premium has not been assigned. When the insurer takes the agent's credit in place of the policy-holder's liability, the premium is paid as between the insurer and the policy-holder. The insurer's cancelation therefore entitled the policy-holder to a return premium, if the payment is good for all purposes. By the statute such a result is avoided. The estoppel against the insurer from claiming non-payment of the premium is lifted to the extent of preventing an unjust advantage to the policy-holder. While the insurer remains bound until cancelation as though the premium has in fact been paid by the policy-holder, it may show upon cancelation that no return premium is due because there is in fact none to return.

When the insurer has taken the agent's credit as payment for the premium, the effect of the statute is to entitle the agent to credit with the insurer for the amount of the return premium. Otherwise he would be chargeable for the cost of insurance not in force. At the same time the credit lessens the policy-holder's liability to him by such amount, and thereby no undue profit to him accrues. The statute, designed to produce this outcome, applies to all cancelations where the policy-holder has not paid the premiums. Whether the cancelation is directly by the insurer on its own account or at the agent's request or whether it is by the agent when he is entitled to cancel, is not material. The statute assumes nothing affecting the ownership of the claim for the earned premium.

The first question transferred is answered in the negative.

The plaintiff's right to charge the defendants for dividends and return premiums paid by her to policy-holders in cases where the defendants have not agreed to the charge, is to be determined by applying a principle of subrogation declared in *Contoocook &c. Precinct* v. *Hopkinton*, 71 N. H. 574. If both the plaintiff and the policy-holders understood that she was purchasing their claims, she became

subrogated to their rights as an assignee and may be reimbursed by the debtors. Otherwise the payments extinguished the debts.

The intestate's death terminated the agency for all companies not renewing or extending it with the plaintiff. As to them she had no authority to pay their debts. Hence, she was either a volunteer or a purchaser in paying them, and there is no duty to reimburse her as a volunteer.

The issue is one of fact which has not been found. In the hearing upon it it may appear that she bought the claims although there were no express terms for a sale of them. The understanding of the parties may be found from the implications of the circumstances. The plaintiff undoubtedly expected reimbursement and hence that she was succeeding to the policy-holders' rights. And if it appears that the policy-holders understood that she was not paying them out of her own pocket but was entitled to credit with the insurers therefor, then a conclusion that they thought the debts remained unextinguished would follow. If they expected she would be reimbursed by the insurers through credit or payment, they expected that she had whatever rights were needed to entitle her to reimbursement. Hence such an expectation would demand the finding of an assignment of the claims to her. Although they may not have given much thought to the matter, if they regarded her as other than a volunteer, then they considered her as a purchaser.

From what is said at the outset, if it is found that the plaintiff is entitled to reimbursement, it may not be made by application of its amount towards the intestate's indebtedness to the reimbursing creditors.

*Case discharged.*

BRANCH and WOODBURY, JJ., did not sit: the others concurred.