ROBERTSON, Justice:
On August 2, 1961, K. L. Hancock of Raleigh, Smith County, Mississippi, acting "by and through his brother-in-law, J. W. Ashley, Jr., purchased a used 1959 model truck-tractor from Mack Trucks, Tnc., in Tampa, Florida. The conditional sales agreement was signed “K. L. Hancock” as vendee with no indication that J. W. Ashley, Jr. signed Hancock’s name as his agent. The conditional sales agreement was immediately transferred and assigned by Mack Trucks, Inc. to Mack Financial Corporation.
Before the vendor would release the truck-tractor to J. W. Ashley, Jr., as agent for K. L. Hancock, it required positive knowledge that a collision insurance policy was in force and effect. J. W. Ashley, Jr. in Tampa, Florida, telephoned Billy John Crumpton of Crumpton Insurance Agency in Raleigh, Mississippi, gave him the pertinent facts with reference to the truck-tractor and the coverage desired and requested him to have the policy issued in the name of K. L. Hancock and to notify the lending agency of the time and amount of coverage. Crumpton did not represent any companies writing insurance on big truck-tractors engaged in long haul transportation, so he telephoned Mississippi Truckers Insurance Agency in Jackson, Mississippi, gave them the data needed and was advised that the insurance coverage would be in full force and effect as of the date and time that Crumpton mailed the down payment on the premium.
Crumpton testified that he “immediately went to the post office and mailed them the down payment and the information that they needed as to motor numbers and what have you, and it was bound as of that date, the minute it went in the post office.” Crumpton immediately wired Mack Trucks, Inc. that the truck-tractor being sold to K. L. Hancock was insured by the American Fidelity Fire Insurance Company, with loss payable clause in favor of Mack Trucks, Inc.
Upon receipt of the telegram, Mack Trucks, Inc. released the truck-tractor to J. W. Ashley, Jr., who returned to Raleigh, Mississippi, with it.
J. W. Ashley, Jr. leased the truck-tractor, along with a trailer of his, to Automatic Poultry Feeders Company, also known as Big Dutchman, Inc. The truck-tractor with trailer attached was thereafter used in long haul transportation by the lessee. Both Hancock and Charles Massey, the regional manager of Big Dutchman, Inc., testified that Hancock had been given credit on his indebtedness to Big Dutchman, Inc. for rental of the truck-tractor.
On September 2, 1961, exactly one month after the purchase of the truck-tractor, the driver, E. H. Wilson, went to sleep at the wheel and the truck-tractor was wrecked when it collided with the side of a concrete bridge. K. L. Hancock immediately notified the insurance agent of the wreck, and some days later an adjuster was sent out by the insurance carrier to inspect the wrecked truck.
On December 22, 1961, K. L. Hancock was examined under oath in Raleigh, Mississippi, by Honorable Thomas H. Watkins representing the insurance carrier and Honorable Luther David Pittman representing the insured, K. L. Hancock.
When the defendant refused to pay the claim, plaintiffs brought suit against the defendant, and upon the trial of the cause, the jury brought in a verdict against the defendant for $7,963.20, and judgment was accordingly entered for this amount.
The appellant assigned as error eight rulings of the lower court. Only the following merit full discussion and analysis:
“1. The lower court erred in failing to grant a peremptory instruction to Appellant on the ground that the insurance policy was obtained by fraudulent concealment and misrepresentation of facts.
“4. The lower court erred in granting instruction No. 7 to Appellees which stat *214 ed that knowledge of the broker was knowledge of the insurance company.
“5. The lower court erred in granting instruction No. 6 to the Appellees since it contained a misstatement of the law.”
The Court, in Instruction No. 7 for Plaintiffs, said:
“The Court instructs the jury that if you believe from a preponderance of the evidence in this case that Billy J. Crump-ton was engaged in the insurance business in the town of Raleigh, Mississippi in August 1961 under the tradename of Crumpton Insurance Agency and that a request was made to said Crumpton on behalf of the plaintiff, K. L. Hancock, for insurance on said Mack Tractor and that said Crumpton did not have a suitable insurance line of his own for said purpose but engaged Mississippi Truckers Insurance Agency to obtain the insurance with the agreement that Crumpton and Mississippi Truckers Insurance Agency would divide the commission accordingly between them and that said Crumpton did collect said insurance premium and divide the commission with Mississippi .Truckers Insurance Agency and conducted all the negotiations with the insured or with an agent of the insured, then the Court charges you that under such circumstances any knowledge of Crumpton relating to matters pertaining to said insurance and known to him prior to the issuance of said insurance contract would be imputed to the defendant insurance company.”
Mississippi Code of 1942, Recompiled (1956), Section '5706 lists the actions of any person that would cause him to be regarded as an agent of the insurance company, in these words:
“Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself,, an application for insurance, or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect or transmit any premium of insurance, or make or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance, for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance, or request, or by the employment of the insurance company, or of,- or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract; such person knowingly procuring by fraudulent representations, payment, or the obligation for the payment, of a premium of insurance, shall' be punished by a fine of not less than one-hundred dollars nor more than five hundred dollars, or be imprisoned for not more than one year.” (Emphasis added.)'-
Crumpton received the information needed to apply for a collision insurance policy-from J. W. Ashley, Jr. He immediately-transmitted this information to the Mississippi Truckers Insurance Agency via telephone. Subsequently, he was advised by Mississippi Truckers Insurance Agency of the terms of the policy and the exact name-of the insuring company. Crumpton immediately telegraphed the information to the-seller, Mack Trucks, Inc. He testified con-, cerning his arrangement with the Mississippi Truckers Insurance Agency:
“A.- Well, we have a broker agree-ment with them whereby we furnish the-information, we do the collecting, we remit directly to them, and they pay us a. brokerage fee on it.
*215 • Q. How long have you had that arrangement with this agency'?
A. Well, I can’t remember but for several' years. I don’t remember the exact number of years but probably eight or ten years.”
As to his knowledge of the purchase of this truck-tractor in K. L. Hancock’s name, 'Crumpton said:
"I had reason to believe that the truck was to be bought to help pay off this place that he and Junior had bought — he and Kendall, K. L. had bought together, yes, sir. There was a truck to be bought, and I don’t know exactly the working arrangement, but they were supposed to be in a deal working with Big Dutchman where they’d go haul some freight and help pay the mortgage on a particular •chicken farm that we had talked about.
******
“I can’t say honestly that I knew this truck was going to be used for that. I did know that — it was not a surprise to me when he called me and told me that a truck was being bought in K. L. Hancock’s name, because I knew that this had been discussed between Junior and myself at times and between Kendall and myself on this deal at times. I did not know that this particular truck was being bought for this particular job.
“Q. When Mr. Ashley came into your office and signed these checks to pay the premium on the policy that was in the name of Kendall, did this not indicate to you at that time that J. W. Ashley had an interest in this truck ?
“A. I think I realized he had an interest in the truck, yes.
“Q. And did. you by any chance, or did he by any chance discuss with you what he was going to do with the truck at that time?
“A. I can’t recall if he did. Again I ■say that it was common knowledge to me .that this truck was going to be used, and it was the reason for these checks being written on a different bank because the money was to be placed there to keep it separate from his other business.”
It is clear from the testimony of Crump-ton and Harold W. Busching, President of Mississippi Truckers Insurance Agency, that Billy John Crumpton performed many of the acts enumerated in Section 5706, which made him an agent of the insuring company. Bankers Fire & Marine Insurance Co. v. Dungan, 240 Miss. 691, 128 So. 2d 544 (1961) is similar in many respects to the instant case. In that case, Burnett, an insurance agent secured an additional fire insurance policy for Dungan, the homeowner, from the general agent of Bankers Fire & Marine Insurance Company in Greenwood, Mississippi. Although, Burnett knew that Dungan had "other insurance” on his home, he did not convey this information to Carpenter, the general agent for the insurance company. When Dun-gan’s home burned and a claim was made, the insurance company refused to pay because they had not been apprized of the "other insurance”. This Court, speaking through Justice Ethridge (now Chief Justice) said:
"The judgment will be affirmed on two grounds: (1) For this transaction, Burnett was the agent of the company under the general law of agency; and (2) he was the agent of the company under the provisions of Miss.Code 1942, Section 5706.
“29 Am.Jur., Insurance, Section 138, entitled 'Agent Procuring Policy in Another Company’, summarizes the pertinent rule as follows:
‘According to the weight of authority, where an insurance agent who is unable or unwilling to sell insurance in his own company to one who has made application for insurance to him in his capacity as an agent representing an insurer and has not *216 employed him as a broker to obtain insurance, procures insurance in a company not represented by himself, either by direct application to the company or through an agent of such company, he acts as the agent of the insurer and not of the insured, and in some jurisdictions it is expressly provided by statute that under such circumstances the insurer shall be charged with the agent’s knowledge of any facts affecting the risk issued, and that he shall be considered the agent of the company issuing the insurance.’ See also 29a Am.Jur., Insurance, Section 1037.” 240 Miss, at 696, 128 So. 2d at 545.
“Miss. Code 1942, Section 5706, defines an agent broadly as one who solicits insurance on behalf of an insurance company, or who takes or transmits, other than for himself, an application for insurance, or who receives or delivers a policy of such company, or performs any other act or thing in the making or consummation of any contract of insurance. He is held to be the agent of the company for which the act is done. In the instant case, Burnett solicited the insurance and knew about the previous policy. He inspected the risk, collected the premium, issuing a receipt for it, delivered the policy, and shared equally in the commission with appellant’s general agent. Burnett had been writing insurance through the Carpenter Agency for more than two years and for some 25-30 transactions. Under these circumstances, Code Sec. 5706, manifestly makes Burnett, pro Jiac vice, the agent of the insurer.
“Accordingly, his knowledge of the additional insurance is imputable to the company, and the trial court was warranted in finding that Burnett, on behalf of appellant, waived the other insurance clause. Liverpool & London & Globe Ins. Co. v. Delaney, 1941, 190 Miss. 404, 200 So. 440. A general agent of an insurance company ordinarily may employ subagents, clerks, and other employees to carry on the business of the agency. Their acts within the scope of their authority are binding on an insurer. 44 C.J.S. Insurance § 153; Paramount Fire Insurance Co. v. Anderson, 1951, 211 Miss. 372, 51 So.2d 763; Aetna Insurance Co. v. Lester, 1934, 170 Miss. 353, 154 So. 706. So for the purposes of this particular transaction, Burnett was a subagent of Carpenter and therefore of the insurer. We are dealing here with an agent of a fire insurance company, who writes policies for the company, and not with a life and health insurance company. See Continental Cas. Co. v. Hall, 1919, 118 Miss. 871, 80 So. 335; Miss.Code 1942, Sections 5719, 5720.” 240 Miss, at 698, 128 So.2d at 546.
Under the authority of Section 5706 as-analyzed and construed in Bankers Fire & Marine Insurance Co. v. Dungan, supra, the lower court was correct in granting Instruction No. 7 for the plaintiffs.
The appellant complains of the granting of Instruction No. 6 for the ap-pellees, which is:
“The Court instructs the jury that in order for the defendant company to defeat liability under the policy in the present instance under the defense of misrepresentation, it would be necessary to show first, that a statement made was material to the acceptance of the risk, secondly, that a material representation made was false, and thirdly, that such representation was made upon the part of the plaintiff Hancock or in his behalf with the intent to defraud.”
The appellant contends that it is not necessary for the false representation to be made with the intent to defraud.
There were eight instructions granted for the plaintiffs, and fifteen instructions granted for the defendant. We feel that considering together all of the instructions granted both for the plaintiffs and for the defendant that a fair and accurate state *217 ment of the law was presented to the jury. We feel that any defect in Instruction No. 6 for the plaintiffs was cured by Instruction No. 3 for the defendant, which Instruction No. 3 contained a very similar clause as to the intent to defraud as that complained of in Instruction No. 6.
The appellant also assigned as error that the lower court erred in failing to grant a peremptory instruction to appellant on the ground that the vehicle became subject to a bailment lease or “other encumbrance” not specifically declared in the policy.
However, the appellant admitted in its brief that the lease from Ashley to Automatic Poultry Feeder Company did not constitute a bailment lease as defined in Motors Insurance Company v. Stanley, 237 Miss. 681, 115 So.2d 678 (1959).
The appellant then shifted gears and claimed that the said lease from Ashley would constitute an “other encumbrance” not specifically declared and described in the policy and, therefore, the entire policy would be voided. The only encumbrances specifically enumerated before the general term “other encumbrance” is used, are bailment lease, conditional sale, purchase agreement, or mortgage.
Applying the rule of ejusdem generis to this contention, the lease from Ashley to Automatic Poultry Feeder Company does not qualify as an “other encumbrance.” It is not similar to a sale or mortgage agreement in any respect.
We find that the other assignments of error are not well taken, and it would accomplish no useful purpose to discuss them.
The judgment of the lower court is, therefore, affirmed.
Affirmed.
ETHRIDGE, C. J., and BRADY, PATTERSON and INZER, JJ., concur.