JONES, Justice.
This is an appeal from a final decree of the Chancery Court of the Second Judicial *399 District of Jones County, Mississippi, regarding an insurance policy on a truck-tractor and trailer unit wherein a decree was entered in favor of the defendants-appellees denying a $9,000 recovery sought by the complainant-appellant under a collision insurance policy for the total loss of a truck-tractor and trailer in a highway collision.
This matter was heard in chancery court upon complainant-appellant’s bill of discovery in regard to said insurance policy and prayer for a judgment thereon. Complainant-appellant’s bill was dismissed with prejudice.
Complainant-appellant appeals here, assigning principally as error that the conclusions of the court in its opinion and final decree are manifestly erroneous as not being based on the evidence presented in the trial of this case, and contrary to the law and overwhelming weight of the evidence, and that the chancery court erred in holding that the policy was cancelled for nonpayment of premiums for the reason that the premiums had been paid at policy issuance to appellee, Southern Insurance Company, by Central Insurance Agency, Inc., on behalf of appellant, Soso Trucking, Inc.
The facts necessary for a decision in this case are as follows. The appellant, Soso Trucking, Inc., is a Mississippi corporation in the trucking business, with its principal place of business located at Soso, Jones County, Mississippi. F. R. Welch is sole stockholder and president of appellant corporation. The corporation owns several tractor-truck and trailer units which it utilizes in its business.
In February of 1967, Soso Trucking, Inc., through its president, F. R. Welch, negotiated with Central Insurance Agency, Inc., of Jackson, with whom it had done business the year before, for liability, collision and cargo insurance on some of its trucks. During these negotiations Central Insurance Agency, Inc. [hereinafter referred to as “local agent” or “Central”], noted that Soso Trucking, Inc., was in arrears on the premium for the 1966 policy and demanded payment for the balance of 1966 "and a substantial part of the 1967 premium. The sum requested was $3,500. Whereupon, Soso Trucking, Inc., gave Central a check dated February 22, 1967, for this amount.
Central had an arrangement with Dupuy-Busching General Agency, Inc. [hereinafter referred to as “general agent” or “Dupuy-Busching”], of Jackson, Mississippi, for securing insurance coverage for Central’s customers. Dupuy-Busching was an authorized agent to issue policies for several companies, including appellee, Southern Insurance Company [hereinafter sometimes referred to as “insurance company”], not contractually represented by Central. When Dupuy-Busching placed business for Central with appellee, Southern Insurance Company, Dupuy-Busching rendered Central a monthly bill for the premiums on said policies. Southern billed Dupuy-Busching for the premiums. Dupuy-Busching billed Central, who, in turn, collected the premiums by billing its customers.
The policy of insurance which is the subject of this suit bore an effective date of February 21, 1967, and was for a period of one year. That policy was Southern Insurance Company Policy Number CA099085 issued through Dupuy-Busch-ing for Central. The premium of $1,720 due on this policy was paid to Dupuy-Busching by Central after its issuance. Dupuy-Busching in turn paid the premium to Southern. The policy, when originally issued, covered a total of five units.
By endorsement dated March 3, 1967, to become effective March 17, 1967, two additional units were added: one tractor-truck unit, serial number DF17006F1658J [designated as unit six], and one trailer unit, serial number 14585 [designated as unit seven]. These are the units destroyed for which insurance benefits are sought in this suit.
*400 The additional premium for the endorsement was $720.11, to afford coverage of $5,000 on the tractor and $4,000 on the trailer. This endorsement was added to the policy; however, Soso Trucking, Inc., was never billed for it.
The February 22, 1967, check of Soso Trucking, Inc., to Central for $3,500 was returned on two occasions for “insufficient funds.” Central tried to get the check honored after the policy had been cancelled and reinstated. After the check was twice returned for lack of funds, Central instructed Dupuy-Busching to issue a cancellation notice of the policy in question. The check in evidence shows that after the check was first returned Central turned it over to the collection department of Deposit Guaranty Bank on March 2, 1967. When it was again returned, Central took it to First National Bank for special collection on March 22, 1967.
Dupuy-Busching issued the requested notice of cancellation on March 14, 1967, to become effective on March 26, 1967. The cancellation notice was mailed by Dupuy-Busching and received by appellant. Even after the cancellation notice was mailed, Central was still trying to get Soso Trucking, Inc.’s, check honored, as indicated above.
Appellee, Southern Insurance Company, contends that it did not actually know of the cancellation of the policy by its agent, Dupuy-Busching, at this time. Because of the loss of a reinsurance contract with an unnamed company, Southern’s office in Dallas, Texas, mailed a cancellation notice of the policy in question directly to the appellant on March 22, 1967. Thereafter, Southern was able to obtain a new “reinsurance contract,” whereupon Southern then sent appellant, by mail, a notice of reinstatement of the policy in question with effective date of March 22, 1967. Apparently, subsequent to receiving the notice of reinstatement from Southern, appellant received the notice of cancellation the following day from Southern out of Dallas, Texas. The notice of cancellation was dated March 22, 1967, and the cancellation was to be effective April 1, 1967. Moreover a final notice of cancellation was sent by Southern to Appellant on May 11, 1967, to be effective May 22, 1967.
On March 28, 1967, the wreck of the tractor-trailer insured under the policy in question occurred. The tractor-trailer struck a bridge between West Point, Mississippi, and Starkville, Mississippi, and was totally destroyed.
The check for $3,500 written on February 22, 1967, by Soso Trucking, Inc., to Central cleared the bank, according to the bank perforations on the check, on March 31, 1967.
As aforementioned, the effective date of the notice of cancellation of the policy sent out by Southern from Dallas on March 22, 1967, was April 1, 1967, and final notice of cancellation was effective May 22, 1967.
From the foregoing résumé it appears that a rider had been attached to the original insurance policy issued by the insurance company on February 21, 1967, insuring two additional units, number six (tractor-truck) and number seven (trailer unit). The effective date of the rider was March 17, 1967. These two units were totally destroyed on March 28, 1967. At the time the property was destroyed the insurance company had reinstated the insurance policy effective March 22, 1967. It was later cancelled effective April 1, 1967, first, and later a notice was given cancelling the policy by the insurance company to become effective May 22, 1967. Both cancellation dates were effective after the accident and loss of the insured vehicles. The insurance company, in answer to the charge that its policy and rider were both in force at the time of the accident, contends that the original policy was cancelled by its general agent, Dupuy-Busching, prior to the accident for failure to pay the premium; that the policy was never effective, and if effective, it was cancelled. This contention is based on the theory that the insured gave *401 the local agent a check for the premium and that this check did not “clear the bank” until after the policy was cancelled. The insurance company says that the policy was reinstated because of a “mistake of fact;” that is to say, the policy was reissued by the insurance company because it did not know its general agent had previously cancelled the policy. Finally, the insurance company charges that it had no notice of the loss as required by the terms of the insurance policy.
An examination of the record in this case has convinced us that the chancellor was in error as to the applicable law under the facts in this case and that the decree of the chancery court should be reversed and judgment entered here for the appellant for the following reasons.
The Southern Insurance Company contends that even if the insurance company were liable under the reinstated policy of insurance, the appellant, Soso Trucking, Inc., is now barred from recovery under the terms of the reinstated policy because the policy required the insured to give notice of the loss “as soon as practicable to the company or its authorized agent” and “to file proof of loss with the company within sixty days after the occurrence of the loss unless such time is extended in writing by the company in the form of a sworn statement of the insured,” setting out the information required by the policy.
An examination of the record reveals, however, that the insured did not receive a copy of the original policy to which the rider was attached although the local agent, Central, was not positive as to whether or not the policy was mailed to Soso Trucking, Inc. It further appears that the attorney for the insured, Soso Trucking, Inc., notified the local agent of the loss on April 11, 1967, well within sixty days after the loss of the two insured automotive units destroyed by fire on March 28, 1967, and requested information with reference to the insurance policy.
The record further shows that the local agent notified Dupuy-Busching, the general agent of Southern Insurance Company, of the claim of Soso Trucking, Inc., but that neither Central nor Southern furnished proof of loss to Soso Trucking, Inc. Mr. Reilly testified that the normal procedure was to have an adjuster come out and help the insured with the proof of loss. However, this procedure was not followed in the instant case.
The record further shows that the attorney for Soso Trucking, Inc., had a telephone conversation with Mr. Reilly, president of Central, and in answer to the following question, gave the following answer:
“Q. Right, and do you remember telling me at that time that all coverage had been cancelled and that Rudolph wasn’t going to get a damn thing?
“A. There’s no telling what I said. I wouldn’t say.”
From the foregoing resume, it is clear that it was necessary for the appellant, Soso Trucking, Inc., to resort to the remedy of discovery afforded by the chancery court in order to discover how to proceed to collect for the loss under the terms of the policy held by the insurance company. In so doing the appellant set out the claim for loss in detail. We are of the opinion that the insurance company could not conceal the terms and requirements of the insurance policy (after having been requested to divulge this information) until after the time set out in the policy for filing proof of loss. We hold, therefore, that the failure of the Southern Insurance Company to divulge the requested information necessary for the use of the insured to file proof of loss was a waiver on the part of the insurance company to file proof of loss. See cases collected in 44 Am.Jur.2d Insurance §§ 1466, 1471 (1969).
Moreover, insurer having waived the filing of the proof of loss by the insured *402 until after suit requiring discovery was filed, the Southern Insurance Company cannot forfeit the policy because proof of loss was not given after the original bill for discovery was filed.
We began our study of this case with the statutory law of our state wherein it is declared that “Every person * * * who takes or transmits * * * any premium of insurance * * * shall be held to be the agent of the company for which the act is done * * Section 5706, Mississippi Code 1942 Annotated (1956).
The record shows that the local agent, Central, had a working arrangement with the general agent, Dupuy-Busching, whereby the local agent placed the insurance contracts with the general agent “on account basis,” and the policy was issued by the general agent for Southern Insurance Company. In the instant case, the policy was issued by the general agent upon the credit of the local agent. Mr. Busching, a witness for general agent, Dupuy-Busching, testified:
“Q. All right, and what is the procedure involved when you place or when he asks you to obtain a part of the policy for him in regard to Southern Insurance Company in regard to the premiums that are paid ?
“A. We are on an account basis with an agency like Mr. Riley’s (sic) (Central) and we render him a monthly account, which he pays the premium such as you have described.”
After stating that he was not familiar with any specific premium, he said he would have known if Mr. Reilly’s account was in arrears. He was then asked:
“Q. * * * Is Mr. Riley’s (sic) account in arrears ?
“A. No, sir.
“Q. And if he had failed to dispense to you for the company the premium due on this policy after it was issued, would his account be in arrears?
“A. Yes.”
After objection had been overruled to this question, the question was again asked:
“Q. Would this account be in arrears if the premium due under this policy had not been paid?
“A. Yes, sir, it would have been in arrears.”
He also said in answer to the question:
“Q. Did you pay the premium to Southern Insurance Company?
“A. Yes, sir.”
The record further shows that the Soso Trucking, Inc., was doing a large insurance business with the Central Insurance Agency and Southern Insurance Company; that they had issued insurance on various trucks requiring payment of premiums of more than $10,000. The record is also clear that part of this insurance business was done on credit. As a matter of fact, the March 31, 1967, bill from the Central Insurance Agency to insured shows a* premium balance of $1,598.28 as being due for the previous year for premiums. Moreover, Mr. Reilly, of the Central Insurance Agency, testified that Soso Trucking, Inc., was charged for the premium on the original policy, and in answer to the question:
“Q. Did he (meaning Soso) not pay the total amount due under policy No. CA 09 90 85, which was $1,720.00?”
He said:
“A. I would say yes.”
He was then asked about the premium for the endorsement on the original policy covering the two units destroyed by fire and he said that the premium for the endorsement was not included in the premium on the original policy.
The testimony in this case clearly shows that the original policy and the endorsement *403 thereon covering the destroyed truck and trailer were issued and put into effect upon the credit of Soso Trucking, Inc., and the premiums on the original policy and the endorsement were, in fact, paid by Central to Southern Insurance Company.
Mr. Busching, the general agent for Dupuy-Busching Insurance Agency, testified as follows:
“BY THE COURT:
“Let me ask you one question:
“Q. Did you pay the premium to Southern Insurance Company?
“A. Yes, sir.”
It has been accepted as a general rule of law that where credit has been given by the general agent of insurer for the premiums on an insurance policy, the transaction is equivalent to payment. Stuyvesant Ins. Co. v. Sussex Fire Ins. Co., 90 F.2d 281 (3rd Cir. 1937); Fidelity & Casualty Co. of New York v. Willey, 80 F. 497 (3rd Cir. 1897); Gaysville Manuf’g Co. v. Phoenix Mut. Fire Ins. Co., 67 N.H. 457, 36 A. 367 (1893). (This case points out that “ ‘It is a general rule in England that the broker is debtor for the premium, and his being so is a payment of it as between the insured and the underwriter.’ * * * ” See also Ireland v. Firemen’s Fund Indemnity Co., 1 N.Y.2d 655, 150 N.Y.S.2d 22, 133 N.E.2d 511 (1956); Horton v. Eagle Indemnity Ins. Co., 86 N.H. 472, 171 A. 322 (1934); Herring v. American Insurance Co., 123 Iowa 533, 99 N.W. 130 (1904); Wytheville Insurance & Banking Co. v. Teiger, 90 Va. 277, 18 S.E. 195 (1893); 45 C.J.S. Insurance § 473(5) at page 198 (1946).
We must, therefore, hold that, under the facts in this case, the original policy was properly issued and, since the premiums were charged to the agent, Central, by the insurance company, the original policy was in full force and effect at the time it was issued.
The Southern Insurance Company contends, however, that even if the original policy was in force at the time it was issued, the check given by Soso Trucking, Inc., for part of the premium on the original policy did not clear the bank and the insurance company had a right to cancel the original policy and that the general agent did cancel the original policy for nonpayment of premiums. We think the answer to this question depends upon whether or not the check was accepted as payment, or was accepted for collection only.
The undisputed testimony of Mr. Rudolph Welch, president of Soso Trucking, Inc., with reference to the check is as follows:
“Q. In negotiating with Mr. Riley (sic) for the renewal of the present policy in question, what discussion was made as to what payments you should make in order to effect this policy and to make up the balance on prior policies?
“A. Well, Frank called and says, ‘we have got to do something about your insurance’, so I said, ‘what can we do, Frank’? He said, T don’t know’. He said ‘get up here’. So the night I went to Jackson I called him from Johns, Mississippi, and told him I was on my way. It was in the neighborhood of nine o’clock, wasn’t it, Frank?
“Q. We are just interested in what the actual conversation was having to do with the amount of the indebtedness on the policy.
“BY MR. SULLIVAN:
“If the Court please, if he will let him answer—
“A. (Continuing.) So Frank met me at the office and we talked about first one thing and another and insurance, too, so I said, ‘Frank, what is the deal?’ He said, ‘well, I have got to have some money on last year’s policy plus a down payment on this coming year.’ I said, ‘how much money are we talking about?’ *404 He said, ‘you owe me around $1,500.00 on last year’s policy.’ He said, ‘you will have to come up with about $2,000.00 down payment for this coming year’, and that was the amount of the check, $3,-500.00.
“Q. Are you telling me that he allowed you to renew a policy without paying the back payments on a policy that was being renewed?
“A. The check is proof of it.
“Q. The check isn’t proof of anything, Mr. Welch. You wrote a check for $3,500.00. What was that payment for, specifically?
“A. For physical damage, liability and cargo insurance.
“Q. All right, now can you break that down as to which policy — all right, $3,-500.00. How much of that was supposed to be payment premium on the insurance policy or renewal policy?
“A. $2,000.00.
“Q. The check you gave Mr. Riley (sic) for $3,500.00, I believe you testified the date of that was February 22?
“A. That’s right.
“Q. And when was that check paid, if ever?
“A. It was paid around the last of March of 1967. I don’t know the exact date.”
Mr. Frank J. Reilly, Jr., president of the local insurance agency, Central Insurance Agency, Inc., testified as follows:
“Q. All right, Mr. Reilly, did your agency at any time after the issuance of that endorsement charge to Mr. Welch the premium or additional premium developed by that endorsement, as shown on your records?
“A. My records don’t reflect it.
“Q. All right, sir, and what was the amount of the additional premium shown on that endorsement?
“A. $720.11.
“Q. To your knowledge did Mr. Welch ever at any time to this date pay you or your agency any portion at all of the premium for this additional endorsement ?
“A. No.
(( * * *
“Q. So you are sayng that under these charges Mr. Welch had no endorsements on any of his policies ?
“A. I would say he was not — under this billing he was not billed for any endorsements.”
Mr. Curtis, the underwriting manager for Southern Insurance Company, testified that the insurance company received an endorsement from its general agent on the original policy; that their reinsurer can-celled their re-insurance on the original policy along with several other policies they had reinsured and that Southern Insurance Company cancelled the original policy of Soso Trucking, Inc.; that thereafter Southern Insurance Company obtained a re-insurance on these policies and the original policy of Soso Trucking, Inc., was reinstated on March 22, 1967. He testified that the insurance company would not have reinstated the original policy if the insurer had actually known the policy had been previously cancelled by its general agent. He said that when the insurance company learned of the cancellation by its general agent, the insurance company mailed a new cancellation notice to the insured dated May 11, 1967, effective May 22, 1967.
In the meantime, the premium check was paid March 31, 1967, after the two automotive units had been totally destroyed by fire on March 28, 1967.
A careful examination of the record in this case has led us to the conclusion *405 that the acceptance of the check by the local agent was obviously a payment on the account because $1,500 was paid for past-due premiums on a previous policy on the same equipment; the $3,500 check did not pay for all the premium due on the re-issuance of the new policy. Moreover, the check given to Central, the local agent, was an outstanding obligation on the part of Soso Trucking, Inc., for premiums on which suit could be maintained by the insurance company. Instead of returning the check to Soso Trucking, Inc., at the time the general agent suspended the original policy, Central returned the check to the bank for payment on the very day the policy was reinstated by Southern Insurance Company and the check was, in fact, paid by the bank at a time when the policy was in force. After the check was paid, a part of the insurance premium on the policy was paid to Dupuy-Busching out of the check after it was cashed. Finally, it will be again noted that the truck and trailer units were not on the original policy for which the check was issued, but were added by an endorsement, and it is clear from the evidence that the premium for the endorsement was paid by Central to Southern Insurance Company by the local agent and charged to Soso Trucking, Inc., on the books of the local agent.
The law seems to be well settled that where a check is accepted as payment for insurance premiums and not accepted for collection by an insurance agent, the transaction is equivalent to payment, and this is true although the check is not paid when first presented to the bank.
It is pointed out in 43 Am.Jur.2d Insurance § 565 (1969) that:
“ * * * However, by an express or implied agreement between the parties a check may be taken in absolute satisfaction of the premium claim, so that if the check is dishonored the insurer is not entitled to declare the policy forfeited for nonpayment, but is relegated to its action on the check. (43 Am.Tur.2d at 582)
There are a good many cases of interest on this point, upholding the payment by check of the premium of insurance. Some of these cases are hereafter set out.
In the case of National Life Co. v. Brennecke, 115 S.W.2d 855 (Ark.1938), the court held that the fact that there are not sufficient funds in the bank upon which a check is given to cover the amount does not prevent its operating as a payment of premium, especially where insurer or its agent has dealt with the check in such a manner as to indicate an intention to receive it as a payment.
In the case of Veal v. Security Mut. Life Ins. Co., 6 Ga.App. 721, 65 S.E. 714 (1909), the court held that if the holder of a life insurance policy sends to the company on the day the premium is due a check in payment thereof, and when the check is presented at the bank, payment is refused because of lack of funds to the credit of the drawer, the company, although it has delivered the premium receipt to the insured, may, by taking the proper steps, repudiate the transaction with a legal fraud resulting from the insured’s having sent a check without having in the bank any funds to meet it, and may enforce the lapse of the policy for nonpayment of premium. But, if the company in such a case, after notice that the check has been dishonored, retains it, and instead of repudiating the transaction by returning the check and demanding back its receipt, insists upon the insured’s paying it after the date on which the policy would otherwise have lapsed, a waiver of the punctual payment of the premium in cash results.
In the case of Inter-Ocean Casualty Co. v. Anderson, 245 Ala. 534, 17 So.2d 766 (Ala.1944), the court said that evidence that a premium check was held by the insurer’s general agent and several attempts were made to cash it up to and including date of insured’s death without forfeiture being declared and entered, the company *406 waives its right to declare forfeiture for the failure to pay the premium.
The general rule is expressed in Anno. 40 A.L.R. 419, 423 (1926), where it is said:
“The general rule appears to be that the mere receipt of a check will not prevent a forfeiture of the policy for nonpayment of premium, but if the check is accepted as payment of the premium, even though it turns out to be worthless, there is payment which will prevent a forfeiture. The crux of the situation appears to be the question of acceptance.”
There are many cases set out under this citation expressing this point of view.
In one case the court pointed out that where insured’s check was given in good faith in payment of premium at a time when his account was sufficient to cover it, and the insurer issued its unconditional receipt for cash, and after the check was dishonored the insurer did nothing to communicate with the insured for several days or until after his death, it was held in State Life Ins. Co. of Indiana v. Little, 264 S.W. 319 (Tex.Civ.App.1924), on error, that the right to forfeit the policy because of nonpayment of premiums had been lost, the court saying that a finding was justified that the check had been received as payment. The court noted distinction between the case where a check was delivered in payment of a valid and subsisting debt and that where the check was delivered in payment of a premium which was not a debt due the insurance company, saying that in the latter case the insurance company acquired a right against the insured which it previously did not have. If the company had not intended to accept the check, ordinary business prudence would have demanded that it return it and request a return of its receipt, and the fact that no effort was made to do so would support the finding that this right had been waived.
Again, in the case of Stone v. Brady Mutual Life Ins. Asso., 2 S.W.2d 538 (Tex.Civ.App.1927), the court held that where an insurer, which, when an assessment check given by insured was dishonored, retained the check without notifying insured, and almost two months later redeposited it for collection, the insurance company was liable on the policy where the insured died while the check was still outstanding, although after his death it was again dishonored. The conduct of the insurer, it was said, at least when taken together with the fact that it also prepared proof of death to be executed by the beneficiary, clearly evidenced an intention to treat the policy as valid and binding at the time of the death of the insured.
It is pointed out by the textwriter in An-no. 50 A.L.R.2d 630, 658 (1956) that:
“Consistently with the rule that an insurer’s attempt to enforce liability on a dishonored check may be taken as evidence that the check was taken as absolute payment, the courts have frequently held that the ordinary assumption that the check was taken conditionally is enforced by evidence that, when payment was refused, the insurer promptly returned the check or informed the insured that the policy was lapsed for nonpayment.”
There is authority to the contrary. See Appleman, Insurance Law and Practice, Vol. 14, § 8144 (1944). We prefer, however, to follow that line holding that the insurance company waives forfeiture for nonpayment of premiums where the premiums are accepted as payment by the agent or where the check is taken as payment. We have previously held that forfeiture for nonpayment of premiums is waived where it is shown that the insurance business between the insured and insurer is carried on in such a manner as to show by custom a waiver of the payment in cash for insurance premiums. See Stonewall Life Ins. Co. v. Cooke, 165 Miss. 619, 144 So. 217 (1932).
In American Fidelity Fire Insurance Co. v. Hancock, 186 So.2d 212 (Miss.1966), this Court held that an in *407 surance broker, who, not having suitable insurance line, ordered truck collision insurance for insured from insurer’s general agent, conducted all negotiations with insured’s brother-in-law, transmitted all pertinent information to general agent and to insured, and shared in general agent’s sales commission, was agent for insurer. We held in that case that knowledge of the local agent was knowledge of the insurance company. Under the facts in the present case, where the local agent, acting for the insurance company, not only advanced the premium to the general agent on the policy issued to Soso Trucking, Inc., but continued to make an effort to collect the check for the premium due on the policy, and, in fact, did pay the insurance company a portion of the premium when it was collected, Central acted for and as agent of Southern Insurance Company. We hold that the insurance company waived the collection of the premium in cash under the facts shown in this case and that the re-issuance of the policy was not a “mistake of fact” because the original policy should not have been cancelled by the general agent.
The Central Insurance Agency, Inc., acted as the agent for the Southern Insurance Company in the collection of premiums on the original insurance policy so long as it attempted to collect the premiums due on the policy issued by the Southern Insurance Company. Mississippi Code 1942 Annotated, section 5706 (1956). It is also clear that Central acted as agent for the Southern Insurance Company in advancing the premium for the rider attached to the original policy insuring the two automotive vehicles later destroyed in the accident. An insurance company cannot insist upon collecting premiums on an insurance policy and, at the same time, successfully contend that the insurance policy had been cancelled for nonpayment of premiums. The check complained of was finally deposited at a time when the policy had been reissued and was paid by the bank.
It must be remembered that forfeitures are not favored in law, and hence the slightest evidence indicating a waiver of such right will support a finding of a waiver. Martin v. New York Life Ins. Co.,. 30 N.M. 400, 234 P. 673, 40 A.L.R. 406 (N.M. 1923). It has been said that the forfeiture of insurance policies is so odious in law that they will be enforced only where there is the clearest evidence that such was the intention of the parties. National Life Co. v. Brennecke, supra. This Court has said “forfeitures are looked upon by the courts with disfavor.” Stonewall Life Ins. Co. v. Cooke, supra. The rule is particularly applicable in this case because it is said equity is not friendly to forfeitures. Hickory Inv. Co. v. Wright Lumber Co., 152 Miss. 825, 119 So. 308 (1928).
We hold, therefore, that the original policy was erroneously cancelled by the general agent since the premium had been paid by (1) the local agent advancing the premium for Soso Trucking, Inc., on the credit of Soso Trucking, Inc., or (2) acceptance of a check by Central Insurance as payment of the premium, although the check was not paid when first presented to the bank, or (3) the payment of the premium in cash was waived by Central Insurance Agency, Inc., acting as agent for Southern Insurance Company, by insisting upon payment of the check given for the premium in the original policy and advancing the premium due on the rider insuring the destroyed vehicles.
It follows, therefore, that Southern Insurance Company owes the insured, Soso Trucking, Inc., for the value of the two automotive vehicles described in the rider to the policy and destroyed in the accident. The testimony shows their value to have been more than $9,000 at the time of the accident.
Judgment in favor of Soso Trucking, Inc., against Southern Insurance Company will be entered here, plus interest and damages.
The decree of the chancery court is hereby reversed and judgment in favor of appel *408 lant, Soso Trucking, Inc., against Southern Insurance Company is hereby awarded to Soso Trucking, Inc., in the sum of $9,000.
Reversed and rendered.
GILLESPIE, P. J., and RODGERS, BRADY and SMITH, JJ., concur.